213 So.2d 365

**Ex parte SOUTHERN BUILDING CODE CONGRESS et al.**

**6 Div. 474.**

Supreme Court of Alabama.

June 20, 1968.

Rehearing Denied Aug. 29, 1968.

McEniry, McEniry & McEniry, Bessemer, and Bradley, Arant, Rose & White, Birmingham, for respondent.

John E. Grenier, Birmingham, for petitioners.

HARWOOD, Justice.

The Southern Building Code Congress is an unincorporated association of which the City of Bessemer is a member. It has its headquarters in Birmingham. This association will hereinafter be referred to as the Congress.

The Southern Building Code Publishing Company is a corporation organized under the laws of this state, with its headquarters in Birmingham. It publishes under the direction of the Congress such codes and revisions thereof as are adopted by the Congress. These publications are made through a magazine entitled "Southern Building Magazine."

The Plumbing Code Revision Committee of the Congress in November 1966, recommended to the Congress certain revisions concerning the use of plastic pipes and fittings not theretofore authorized under the building codes of the Congress.

Notice of these recommendations was published in the Southern Building Magazine as provided in the Constitution of the Congress.

The Constitution of the Congress further provides that within 30 days after due publication of recommended revisions in the building codes, the Executive Secretary shall cause to be distributed ballots to the active members of the Congress for their votes on such proposed changes in the building codes.

Pursuant to the above procedure the Executive Secretary did distribute ballots relative to the proposed change in the plumbing code of the Congress. This procedure resulted in a vote of 123 members in favor of the revision, and 108 against such revision.

The City of Bessemer filed in the Circuit Court of the Tenth Judicial Circuit, Bessemer Division, a bill seeking an injunction directed to the Congress, the Southern Building Code Publishing Company, Inc., and Robert N. Carroway, Executive Secretary of the Congress, prohibiting the named respondents from publishing in the Southern Building Magazine any notice that the purported revisions of the plumbing code of the Congress had been enacted.

The basis of the relief sought is that at least 64 active members of the Congress did not receive ballots, and therefore did not have an opportunity to vote on the ratification of the proposed revisions of the plumbing code of the Congress.

Pursuant to the bill of complaint and prayers therein, the court on 14 April 1967, issued a temporary writ of injunction prohibiting the respondents from publishing in anywise any notice to the effect that the proposed amendment to the plumbing code had been ratified.

Thereafter the respondents in the injunction proceedings filed a motion in the court below setting forth that neither of them maintains a place of business, or resides, in the Bessemer Division of the Tenth Judicial Circuit, and that the cause should have been brought in the Circuit Court of the Tenth Judicial Circuit holding in Birmingham.

The respondents thereupon moved that the cause be transferred to the Birmingham Division pursuant to the provisions of Sec. 156, Tit. 13, Code of Alabama 1940.

On 10 May 1967, Hon. E. L. Ball, Circuit Judge for the Tenth Judicial Circuit, Bessemer Division, sitting in Equity, denied the motion to transfer the case to the Birmingham Division.

Following this ruling, the respondents in the injunction suit filed in this court on 19 May 1967, a petition for a writ of mandamus directed to Judge Ball requiring him to vacate his order denying the motion to transfer. The petition averred, among other things, that none of the petitioners (respondents in the injunction proceedings) resided in, or maintained a place of business in the Bessemer Division of the Tenth Judicial Circuit, and that none of the matters complained of occurred in the Bessemer Division, but if they occurred at all, took

**526**

place in the Birmingham Division of the Tenth Judicial Circuit.

On 24 May 1967, this court issued an alternative writ of mandamus as prayed for, returnable within 30 days.

On 19 June 1967, Judge Ball filed his answer to the alternative writ.

In his answer, Judge Ball sets forth that in the earlier cases this court adopted the venue test in determining the question of the respective jurisdiction of the Birmingham Division of the Tenth Judicial Circuit, and of the Bessemer Division of the Tenth Judicial Circuit. If a material defendant resided in the Bessemer Division, the case was properly processed there. See Ex parte Fairfield-American Nat. Bank, 223 Ala. 252, 135 So. 447; Ex parte Kemp et al., 232 Ala. 434, 168 So. 147.

Judge Ball further points out that in Ex parte Central of Georgia Railway, 243 Ala. 508, 10 So.2d 746, this court overruled the *Fairfield-American Nat. Bank,* supra, and *Kemp et al.,* supra, abandoned the venue approach and adopted as a basis of jurisdiction in the Bessemer Division the fact as to where the cause of action or case accrued or arose. This basis of jurisdiction of cases or causes of actions was again approved in the fairly recent case of Seaboard Surety Co., v. William R. Phillips & Co., 279 Ala. 510, 187 So.2d 264.

We are in accord with Judge Ball's interpretation of the above mentioned cases.

The answer further sets forth that in its bill the City of Bessemer seeks relief on the theory that the election to change the plumbing code was not held as required by the Constitution of the Congress, and was therefore invalid.

In paragraph 5(b) Third, the answer sets forth:

"*Third,* complainant must show a violation of the Constitution. The particular violation alleged involves, of course,

an election held pursuant to the Constitution seeking the approval or rejection by the members of the Association of certain proposed amendments to the Plumbing Code issued or promulgated by the Association. Since the election was conducted by distribution of ballots through the mails to active members located throughout the southeast who marked their ballots and returned them by mail, it necessarily follows that the election was held wherever an active member was located— including, of course, the Bessemer Division."

We do not agree with the conclusion of the court as set forth in the above paragraph as to the situs of an election being controlled by the situs of one of the electors casting a ballot.

 The primary meaning of the word "election" is choice. It relates to the time when the ballots are cast. State ex rel. Harris v. Tucker, 54 Ala. 205; Vickery v. King, 281 Ala. 303, 202 So.2d 148. Where, as here, ballots are issued by mail to be returned to election officials in a certain place, whereat the ballots are to be canvassed and the results of the election announced, the place of choosing, or the place of the election, must be deemed the place where the ballots are received and counted by the election officials, and not the place from which an elector marks and mails his ballot.

 We hold therefore that the election pertaining to revising the plumbing code of the Congress must be deemed to have been held in Birmingham, and not in the Bessemer Division.

Since the creation of the Bessemer Division of the Tenth Judicial Circuit in 1893 by Act No. 281 (Acts of Alabama 1892–1893, p. 669), much litigation has arisen concerning the Act and the various amendments of the Act. For the purposes of this review, we need only consider Section 2 of Act No. 213, approved 18 August 1919. See 1919 Local Acts of Alabama, p. 62.

While Act 213 has been amended, these amendments do not affect the essential jurisdiction of the Circuit Court of the Tenth Judicial Circuit, Bessemer Division, as set forth in Sec. 2 of the 1919 Act which is in effect today. Section 2 provides:

"The said Circuit Court of the Tenth Judicial Circuit, holding at Bessemer, as in this Act provided, shall have, exercise and possess all of the jurisdiction and the powers which are now or which may hereafter be conferred by law on the several Circuit Courts of this State, which said jurisdiction and powers shall be exclusive in, limited to, and extend over that portion of the territory of the County of Jefferson, which is included in the following precincts, to-wit: (description of territory) * * * and from and over the above mentioned and described territory all jurisdiction and powers heretofore or now exercised or existing therein by the Circuit Court of the Tenth Judicial Circuit, as now held at Birmingham, is hereby expressly excluded." (Par. ours)

Section 2 above of the 1919 Act merely re-enacts Section 2 of the original Act No. 281, supra. Section 2 of the original Act No. 281 was the subject of the following observation in Triest and Co. v. Enslen, 106 Ala. 180, 17 So. 356:

"The essence of the act, indeed, is nothing more or less than to provide for the holding of terms of the circuit court of Jefferson County at Bessemer for the trial of civil causes arising in a certain defined part of said county; and this, and nothing else, is, to all common understanding, aptly expressed in the title of the enactment, and the several provisions thereof are cognate and referable to this one subject-matter."

The re-enactment of Section 2 of the original Act No. 213 in the 1919 Act must be deemed a legislative approval of the construction of Section 2 of the original Act, particularly since the proper court in which to bring suits in Jefferson County (Tenth Judicial Circuit) "was presented to lawyers and judges continually through the years." Ex parte Central of Georgia Ry. Co., 243 Ala. 508, 10 So.2d 746.

In *Central of Georgia,* supra, it was again reiterated that:

"Clearly all suits maintainable in Jefferson County under the general venue statutes are still maintainable in that county. All such suits not maintainable in Bessemer are properly brought in Birmingham, the county seat. Since the venue of suits in the Bessemer Division of the circuit Court is limited to suits upon causes of action arising within the territorial jurisdiction of that court, suits upon all causes of action not arising therein must be brought in Birmingham.

"This, it seems to us, gives effect to the terms of the statute to the effect that the court at Bessemer has exclusive jurisdiction of all civil actions at law upon causes of action arising in the territorial jurisdiction of that court, and such jurisdiction is limited to suits upon causes of action arising within such territory."

Because of the above language in *Central of Georgia,* supra, Judge Ball in his answer observes:

"Thus for civil actions, the *cause of action* must arise in the Bessemer Division, while in Equity cases, the *case* must arise in the Bessemer Division. The difference in language may be significant. The remedy sought most often makes a matter one of equitable cognizance."

We do not attribute any limiting influence to the statement in *Central of Georgia,* supra, that "the court at Bessemer has exclusive jurisdiction of all civil actions at law upon causes of action arising in the territorial jurisdiction of that court * * *" The court was there considering a civil action at law. On the

other hand, in Triest and Co. v. Enslen, supra, the proceedings involved a proceeding in equity. Further, Section 2 of the 1919 Act specifically confers on the Bessemer Division of the Circuit Court the powers and jurisdiction of the circuit courts of this state, but limits such jurisdiction to the territory of what is commonly referred to as the Bessemer Cutoff. Certainly equity jurisdiction inheres in the circuit courts of this state.

Thus in the injunction proceedings if the "right" or "wrong" did not arise in the Bessemer Division, no jurisdiction of the circuit court for that division existed. No remedy, either legal or equitable, can therefore be said to exist to redress such "right" or "wrong" in the Bessemer Division if the circuit court of that division be without jurisdiction in the premises.

■ "Remedy" signifies the judicial means for enforcing a right or redressing a wrong. Walters v. City of Ottawa, 240 Ill. 259, 88 N.E. 651. It is distinct from a "cause of action," and is the means by which the cause of action is satisfied. Hamlin Machine Co. v. Holtite Mfg. Co., 197 Md. 148, 78 A.2d 450.

Yet, the words "action," "cause of action," "right," "remedy," and "redress," are often used in a legal sense so that one implies another; in fact they are so related that one, at times, of necessity includes the other. Painter v. Berglund, 31 Cal.App.2d 63, 87 P.2d 360. "However, the ideas of right and remedy are inseparable. 'Want of right and want of remedy are the same thing.'" Edwards v. Kearzey, 96 U.S. 595, 24 L.Ed. 793. To the same effect see Blakemore v. Cooper, 15 N.D. 5, 106 N.W. 566.

■ Since, in our view, the purported election conducted by the Congress must be deemed to have its situs in Birmingham, and since the irregularity allegedly infecting this election constitutes wrong for which the City of Bessemer sought relief in the injunction proceedings, and since

none of respondents in the injunction proceedings resided in, or had headquarters in the Bessemer Division, but in Birmingham, the case or cause of action did not arise in the Bessemer Division.

The lower court therefore erred in denying the petitioner's motion to transfer the injunction proceedings to the Birmingham Division.

The writ of mandamus is due to be awarded.

If, upon advice of this decision, the lower court does not enter an order expunging its order denying the motion to transfer the injunction proceedings, and enter in lieu thereof an order granting the motion to transfer such proceedings to the Birmingham Division, a writ to effectuate such ends will issue on request of the petitioners.

Writ awarded conditionally.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.