These three mandamus petitions have been consolidated for purposes of writing one opinion. We grant the petitions and issue the writs.
 Facts and Procedural History
On September 23, 2001, 13 people died as a result of a mining accident in a mine owned and operated by Jim Walter Resources, Inc. ("JWR"), in Tuscaloosa County. Among those killed were John W. Knox and Gaston Earl Adams, Jr., employees of JWR.
 A. Cases no. 1020254 and 1020309
Jacqueline Knox, the widow of John W. Knox, is a resident of Jefferson County and lives in Bessemer. In April 2002, she sued George Richmond, Jesse Cooley, Trent Thrasher, Mark Piper, and Tommy Spencer, co-employees of Knox's (hereinafter referred to collectively as "the co-employee defendants"), and Walter Industries, Inc. ("Walter"), JWR, and Black Warrior Methane Corporation ("BWM") (hereinafter collectively referred to as "the corporate defendants") in the Bessemer Division of the Jefferson Circuit Court. She contended that the co-employee defendants and the corporate defendants were liable under various legal theories for the death of her husband. JWR and BWM both have their principal places of business in Tuscaloosa County, while Walter's principal place of business is in Tampa, Florida. At least two of the co-employee defendants live in Bessemer, another lives in Birmingham, and the remaining two live in Tuscaloosa County. The defendants moved to transfer the case to the Tuscaloosa Circuit Court, arguing that venue in the Bessemer Division of the Jefferson Circuit Court was improper, and alternatively that, if venue was proper there, the case should nonetheless be transferred to the Tuscaloosa Circuit Court pursuant to Ala. Code 1975, § 6-3-21.1 (the forum non conveniens statute). The trial court denied the motions. The co-employee defendants, in case no. 1020309, and the corporate defendants, in case no. 1020254, now petition this Court for writs of mandamus directing the trial court to transfer the case to the Tuscaloosa Circuit Court.
 B. Case no. 1011467
Sarah June Adams, the widow of Gaston Earl Adams, Jr., is a resident of Jefferson County and lives in Bessemer. In October 2001, she sued Walter and BWM in the Bessemer Division of the Jefferson Circuit Court, alleging that both were liable for the death of her husband. Walter and BWM also moved the trial court to transfer the case to the Tuscaloosa Circuit Court, and the trial court denied the motion. In case no. 1011467, Walter and BWM seek a writ of mandamus directing the trial court to transfer the case to the Tuscaloosa Circuit Court.
 Standard of Review
"The question of proper venue for an action is determined at the commencement *Page 549 
of the action." Ex parte Pratt, 815 So.2d 532, 534 (Ala. 2001). "If venue is not proper at the commencement of an action, then, upon motion of the defendant, the action must be transferred to a court where venue would be proper." Ex parte Overstreet,748 So.2d 194, 196 (Ala. 1999). "A petition for a writ of mandamus is the appropriate means for challenging a trial court's refusal to transfer an action and such a petition is due to be granted if the petitioner makes a clear showing of error on the part of the trial court." Ex parte Alabama Power Co., 640 So.2d 921, 922
(Ala. 1994). "In considering a mandamus petition, we must look at only those facts before the trial court." Ex parte American Res.Ins. Co., 663 So.2d 932, 936 (Ala. 1995).
 Analysis
This case turns on the unique legal status of the Bessemer Division of the Jefferson Circuit Court. The Tenth Judicial Circuit, which consists of Jefferson County, is divided into two divisions — the Bessemer Division, also known as the Bessemer Cutoff, and the Birmingham Division. The Bessemer Division was created by Act No. 281, Ala. Acts 1892-93. Section 2 of that act provided:
 "That the said circuit court, holding as above provided, shall have, exercise and possess all of the jurisdiction and powers which are now, or which may hereafter be conferred by law in the several circuit courts of this State, which said jurisdiction and power shall be exclusive in, limited to, and extend over that portion of the territory of the county of Jefferson, which is included in the following precincts, to-wit: [physical description of the Bessemer Division] and that from and over the above mentioned and described territory all jurisdiction and power exercised therein at the time of the passage of this act by the circuit court of Jefferson county, as now held at Birmingham, and the common law jurisdiction and power of the city court of Birmingham is hereby expressly excluded."
(Emphasis added.) The constitutionality of that act was upheld inTrieste Co. v. Enslen, 106 Ala. 180, 17 So. 356 (1895). InTrieste Co., this Court stated:
 "The essence of the act indeed is nothing more or less than to provide for the holding of terms of the circuit court of Jefferson county at Bessemer for the trial of civil causes arising in a certain defined part of said county; and this and nothing else is, to all common understanding, aptly expressed in the title of the enactment, and the several provisions thereof are cognate and referable to this one subject matter."
106 Ala. at 186-87, 17 So. at 358 (emphasis added). Although that act was subsequently repealed, see Act No. 1055, Ala. Acts 1900, it was reenacted in 1919 by Act No. 213, Ala. Local Acts 1919. Section 2 of the 1919 act reenacted section 2 of the original act without a substantive change in wording (the 1919 act is hereinafter referred to as "the Act").[1]
After Trieste Co., the Bessemer Division and the Birmingham Division were treated, in effect, as two counties for purposes of venue. See Ex parte Kemp, 232 Ala. 434, 168 So. 147 (1936); Exparte Fairfield-American Nat'l Bank, 223 Ala. 252, 135 So. 447
(1931). If, under the general venue statutes, venue was appropriate in either division, then the plaintiff could elect to bring a case in the division of his choice. Kemp,232 Ala. at 435-36, *Page 550 168 So. at 148-49. No limitation on the powers of the Bessemer Division was acknowledged. Id. ("We do not read in the act of 1919 any more specific requirement as to the venue of suits in Bessemer than if it were in a different county from Birmingham.").
Kemp and Fairfield-American National Bank, however, were overruled by Ex parte Central of Georgia Railway, 243 Ala. 508,10 So.2d 746 (1942). In Central of Georgia Railway, the defendant in a wrongful-death action sought a writ of mandamus ordering the trial court to transfer the case from the Bessemer Division to the Birmingham Division. Because the cause of action arose in the Birmingham Division, the defendant argued, venue in the Bessemer Division was improper.
The Court in Central of Georgia Railway noted that section 2 of the Act controlled the "territorial jurisdiction" of the Bessemer Division. After examining the history of the 1893 and 1919 acts, as well as our previous holding in Trieste Co.,supra, the Court stated:
 "Reading the legislative mind from the Act of 1919 as a whole, we are impressed that Section 2 thereof, which is the law to this day, means that civil suits at law can properly be brought at Bessemer only in cases arising in the Bessemer District, meaning `civil causes arising' therein, to use the words of Triest[e] Co. v. Enslen, [106 Ala. 180, 17 So. 356 (1895)].
 "The purpose of our several legislative acts providing for holding terms of the circuit court at places other than the county seat is for the convenience of the people in the district defined by statute. In the Act before us, as construed by this court soon after its passage, this convenience was deemed to be best conserved by giving exclusive jurisdiction of civil suits based upon causes of action arising in the Bessemer District, and limited to causes of action arising therein. The [A]ct does not deal with what suits may properly be brought in Jefferson County under the general venue laws of Alabama. The Constitution and statutes prescribe the county or counties in which the several classes of actions may be brought. The statute before us deals with the venue as between divisions of the circuit court, each with like jurisdiction over the subject matter, but held at different places in the county. To make clear that the general venue laws should not be construed into these statutes, the lawmakers wrote into the chapter on Venue of Actions the following: `§ 64. Local laws in counties having two courthouses unaffected. — In all counties having two courthouses, the provisions of this chapter shall not affect any local laws relating to venue in force at the adoption of this Code.' [Ala. Code 1975, § 6-3-10].
 "Clearly all suits maintainable in Jefferson County under the general venue statutes are still maintainable in that county. All such suits not maintainable in Bessemer are properly brought in Birmingham, the county seat. Since the venue of suits in the Bessemer Division of the circuit court is limited to suits upon causes of action arising within the territorial jurisdiction of that court, suits upon all causes of action not arising therein must be brought in Birmingham.
 "This, it seems to us, gives effect to the terms of the statute to the effect that the court at Bessemer has exclusive jurisdiction of all civil actions at law upon causes of action arising in the territorial jurisdiction of that court, and such jurisdiction is limited to suits upon causes of action arising within such territory." *Page 551 243 Ala. at 512-13, 10 So.2d at 749-50 (emphasis added). Because the cause of action in Central of Georgia Railway did not arise in the territorial boundaries of the Bessemer Division, the Court held that the defendants were entitled to have the case transferred to the Birmingham Division. Id.
In the years following Central of Georgia Railway, this Court has consistently held that, unless the issue is waived, the Bessemer Division can hear only cases that have "arisen" within the territorial boundaries of that division. See Seaboard SuretyCo. v. William R. Phillips Co., 279 Ala. 510, 512,187 So.2d 264, 266 (1966) (opinion on application for rehearing) (noting that the Act limits the "territorial jurisdiction" of the Bessemer Division to cases that "arose" in that division); Exparte Southern Building Code Congress, 282 Ala. 523,213 So.2d 365 (Ala. 1968) (holding that the Act limits the jurisdiction conferred on the Bessemer Division to causes of action that arose there); Mead Corp. v. City of Birmingham, 295 Ala. 14,321 So.2d 655 (1975) (same); MetroBank v. Reid, 374 So.2d 296 (Ala. 1979) (same); and Ex parte Fields, 432 So.2d 1290, 1292 (Ala. 1983) ("the Bessemer Division is given exclusive jurisdiction of civil suits based upon causes of action arising in the Bessemer Division and limited to causes of action arising therein"). In upholding the dismissal of cases improperly filed in the Birmingham Division of the Jefferson Circuit Court, this Court stated:
 "We opine that the legislature, in enacting Section 2, Local Act No. 213, in effect created two circuit courts within one county. By the Act, the Circuit Court holding in Bessemer was given the same power exercised by the Tenth Judicial Circuit, but it could exercise such power only for actions arising in its territorial boundary."
United Supply Co. v. Hinton Constr. Dev., Inc.,396 So.2d 1047, 1050 (Ala. 1981).
In Glenn v. Wilson, 455 So.2d 2 (Ala. 1984), Justice Shores noted that some of the cases interpreting the effect of the Act "are less than clear and seem to confuse venue and jurisdiction by use of the term `territorial jurisdiction.'" 455 So.2d at 4. Justice Shores concluded, "The Bessemer Cutoff legislation does not diminish the general jurisdiction of the other circuit courts, either in Jefferson or other counties"; instead, cases filed in the wrong division were subject to transfer, unless the parties waived the venue issue. Id. at 4-5. Subsequent decisions on the Bessemer/Birmingham Division venue issue have concluded that the Act controls venue between the divisions. SeeEx parte World Omni Fin. Corp., 491 So.2d 236, 237 (Ala. 1986) ("Venue in this case is controlled by the local act creating the Bessemer Division."); Ex parte Jackson, 516 So.2d 768, 769
(Ala. 1986) (agreeing that the Act "should be read as venue legislation rather than jurisdiction legislation and that the two divisions should be treated as if they were two separate counties"); Ex parte Johnson, 692 So.2d 843, 845 (Ala.Civ.App. 1997) ("It is well established that the Bessemer Division is, in fact, a separate and distinct circuit with the same power exercised by the Tenth Judicial Circuit, . . . and that the legislation creating the two divisions in Jefferson County is `venue' legislation rather than `jurisdiction' legislation.").
The petitioners in this case allege that the plaintiffs' causes of action arose outside of the Bessemer Division. In Ex parteFields, this Court discussed where a cause of action "arises" within the context of the Act. In that case, the Jefferson County Planning and Zoning Commission had rezoned a parcel of property lying in the Bessemer Division. Certain residents *Page 552 
of the Bessemer Division challenged the rezoning ordinance in that court. The defendant, U.S. Steel, filed a motion to transfer the action to the Birmingham Division, arguing that the action did not "arise" in the Bessemer Division. In determining where the action arose, the Court stated:
 "In Seaboard Surety Co. [v. William R. Phillips Co., 279 Ala. 510, 187 So.2d 264 (1966)], this court applied the general principles regarding the place where a cause of action arises as expressed in 92 C.J.S. Venue § 80, in determining the jurisdiction of the Bessemer Division. This court said:
 "`At 92 C.J.S. Venue § 80, p. 776, speaking of statutes fixing venue as the county "where the cause of action arises" it is noted:
 "`"A cause of action, within the meaning of statutes fixing the venue as the county where the cause of action arises has been said to consist of a duty on the part of one toward another and the violation or breach of that duty, or of plaintiff's primary right and the act or omission of defendant. . . . It arises when that is not done which should have been done, or that is done which should not have been done. . . . [T]he cause of action accrues in the county in which defendant's wrongful act was done."
 "`Relating these general principles to the case at hand, it seems reasonable to us . . . that . . . the cause of action "arose" within the meaning of the Bessemer Division Act within the Bessemer Division.'
 "279 Ala. at 513, 187 So.2d at 267. These general principles control in the case before us. Applying these principles, we opine that the alleged wrong for which the petitioners seek redress occurred in the Birmingham Division, and, thus, the cause of action arose there."
Ex parte Fields, 432 So.2d at 1292-93. See also Winn-DixieMontgomery, Inc. v. Bryant, 421 So.2d 1254, 1256 (Ala. 1982) (noting, in a case involving the Act, that "a case arises wherever the alleged wrong occurs"); Ex parte Central of GeorgiaRy., 243 Ala. at 511, 10 So.2d at 748 (holding that a wrongful-death action arose at the time and place of the injury causing the death).
All of the cases this Court uncovered that address the issue of the propriety of maintaining an action in the Bessemer Division deal with factual situations in which the cause of action arose in either the Bessemer Division or the Birmingham Division — i.e., in Jefferson County. In this case, the "alleged wrong for which the petitioners seek redress" occurred not in the Bessemer Division, but in Tuscaloosa County. No case, as far as this Court can determine, has addressed the issue presented in this case — whether venue in the Bessemer Division is proper in a case where the cause of action arose outside Jefferson County.
It is clear that, in creating the Bessemer Division, the Legislature specifically limited the powers of that division. This Court's first decision on the issue, Trieste Co., recognized this limitation and held that the Jefferson Circuit Court, sitting in the Bessemer Division, could hear only cases "arising" in the territorial boundaries of the division. While at times this limitation has been described as jurisdictional, this Court has recognized since Glenn v. Wilson, supra, that the limitation in the Act is one of venue. In sum, the voluminous caselaw on this issue clearly holds that venue for an action filed in Jefferson County is proper in the Bessemer Division only if the cause of action "arose" in that division. *Page 553 
In determining whether venue in this case is proper in the Bessemer Division, we are guided by this Court's opinion in Exparte Alabama Mobile Homes, Inc., 468 So.2d 156 (Ala. 1985). InAlabama Mobile Homes, this Court employed a two-step analysis to determine whether an action should be brought in the Bessemer Division. First, we must determine whether Jefferson County is the proper venue for the action. Id. at 161. If the case was properly brought in Jefferson County, then
 "we must determine which of the two divisions the case should have been filed in. An action must be brought in Bessemer if it `arises' within the territorial boundaries of the Bessemer Cutoff. Local Act No. 213, § 2, p. 62, Ala. Acts 1919. All suits maintainable in Jefferson County which do not arise in Bessemer should be brought in the Birmingham Division."
468 So.2d at 161-62 (emphasis added).
The parties in these cases dispute, without much discussion, whether venue is proper in Jefferson County. However, assuming, without deciding, that venue in Jefferson County is proper, we hold that venue in the Bessemer Division is not proper because the plaintiffs' claims did not "arise" within the territorial boundaries of that division. Id. at 162. See also UnitedSupply Co., 396 So.2d at 1050 (the Bessemer Division may exercise its power "only for actions arising in its territorial boundary"); Central of Georgia Ry., 243 Ala. at 512,10 So.2d at 749 ("civil suits at law can properly be brought at Bessemer only in cases arising in the Bessemer District"). Therefore, even if venue in these cases is proper in Jefferson County, venue is improper in the Bessemer Division. The actions belong instead, assuming venue is proper in Jefferson County, in the Birmingham Division.
The petitioners, however, did not ask that the actions be transferred to the Birmingham Division of Jefferson County; instead, they requested that the actions be transferred to Tuscaloosa County. It is undisputed that Tuscaloosa County is a proper venue — it is the county in which the "act or omission complained of" and "a substantial part of the events or omissions giving rise to the claim" occurred. Ala. Code 1975, §§6-3-2(a)(3) and 6-3-7(a)(1). When a plaintiff commences an action in an improper forum, the defendant may move for a transfer to a proper forum. Ex parte Alfa Mut. Gen. Ins. Co., 806 So.2d 367,369 (Ala. 2001); see also Ala. Code 1975, § 6-3-21. The defendants have demonstrated that the Bessemer Division is an improper forum; therefore, the defendants were entitled to a transfer of the actions to the Tuscaloosa Circuit Court. Ala. Code 1975, §6-3-21. The defendants have demonstrated that the trial court erred in refusing to transfer the actions; accordingly, the petitions are granted. Alabama Power Co., 640 So.2d at 922.
PETITIONS GRANTED; WRITS ISSUED.
SEE,[2] WOODALL, and STUART, JJ., concur.
HOUSTON and HARWOOD, JJ., concur specially.
MOORE, C.J., and LYONS and JOHNSTONE, JJ., dissent.
[1] The Act was amended in 1943, see Act No. 199, Ala. Local Acts 1943. Again section 2 was reenacted without a substantive change in wording.
[2] Justice See did not attend oral arguments in these cases held on May 13, 2003; however, he has reviewed the videotape of the oral arguments.