The Children's Hospital of Alabama and Martha Pszyk petition this Court for a writ of mandamus directing the trial court to transfer a case from the Bessemer Division of the Jefferson Circuit Court to the Birmingham Division. The respondent, Harrison Taylor Terry, as personal representative of the estate of Austin Taylor Terry, deceased, moved to dismiss the petition for the writ of mandamus. We deny the motion to dismiss, grant the petition, and issue the writ. *Page 3 
 Facts and Procedural History
On September 6, 2002, Austin Taylor Terry, a 14-month-old child, was admitted to the emergency room of the Children's Hospital of Alabama ("the Hospital") in Birmingham. Austin lived with his mother and custodial parent, Amber Michelle Phillips, in Bessemer. The admitting doctor noted that Austin was suffering from "Non-Accidental Trauma." The doctor assigned Martha Pszyk, a social worker employed by the Hospital, to the case. Pszyk contacted both the Department of Human Resources ("DHR") and the Bessemer Police Department on the day Austin was admitted to the Hospital. The Hospital states that, upon determining that Austin was medically stable, the treating physician discharged Austin to Phillips, based on instructions received by the Hospital from DHR.
On November 2, 2002, Phillips discovered Austin nonresponsive in his crib. She rushed him to the Hospital and, according to the Hospital, Austin arrived "in grave condition"; he died the next day. Phillips's boyfriend, Christopher Wesson, was charged with capital murder for Austin's death. The criminal case against Wesson is pending in the Bessemer Division of the Jefferson Circuit.
On December 5, 2002, Harrison Taylor Terry, Austin's father, sued the Hospital, DHR, and DHR employee Susan Tulle in the Bessemer Division of the Jefferson Circuit Court (case no. CV-02-1703). The complaint alleged that the defendants: (1) had failed to adequately and timely report that Austin had been abused; (2) had failed to investigate and otherwise to act upon allegations of abuse; (3) had failed to remove Austin from a life-threatening situation; and (4) had allowed Austin to be released to the care and custody of individuals who were suspected of abuse. On January 16, 2003, the Hospital moved to dismiss Terry's complaint or, in the alternative, for a change of venue to the Birmingham Division of the Jefferson Circuit Court. The trial court denied that motion, and the Hospital moved the trial court to reconsider it.[1]
On April 29, 2003, Phillips filed in the Bessemer Division of the Jefferson Circuit Court a separate wrongful-death action against the Hospital, Pszyk, Wesson, and DHR employees Susan Tulle, JoAnn Hood, and Evonne Sumerlin (case no. CV-03-565). Her complaint alleged that the Hospital, Pszyk, and the DHR employees failed properly to report and investigate suspicions and allegations of abuse and to remove Austin from a life-threatening situation. On June 3, 2003, the Hospital and Pszyk moved to dismiss Phillips's complaint or, in the alternative, for a change of venue to the Birmingham Division.
On that same day, June 3, 2003, the Hospital for a second time moved the trial court in case no. CV-02-1703, the case brought by Austin's father, Terry, to dismiss that case, arguing that, because Phillips was Austin's custodial parent at the time of his death, the exclusive right to bring a wrongful-death action belongs to Phillips. See § 6-5-390, Ala. Code 1975. Terry responded and also sought a preliminary injunction to prevent Phillips from pursuing her wrongful-death action.
On November 20, 2003, the trial court heard arguments regarding who is the proper plaintiff to bring a wrongful-death action arising out of Austin's death. The trial court stated, "I will rule on the standing issue. And I will do it before I do *Page 4 
anything about the transfer concerning the medical malpractice and let y'all file whatever y'all want to."
On May 13, 2004, Phillips filed a motion to amend the complaint in her wrongful-death action to dismiss "without prejudice any claims by the Plaintiff, Amber Michelle Phillips, in her capacity as mother and custodial parent of Austin Taylor Terry," and to substitute as the plaintiff "Harrison Taylor Terry, as personal representative of the Estate of Austin Taylor Terry, deceased."[2]
On May 24, 2004, the trial court dismissed the case that had been filed by Terry on December 5, 2002 (case no. CV-02-1703), and on May 28, 2004, the Hospital moved for the dismissal of the amended complaint in case no. CV-03-565, in which Terry had been substituted as the plaintiff. The Hospital argued that, under § 6-5-390, Terry, as a noncustodial parent, is not a proper plaintiff. Thus, there were before the trial court two motions to dismiss in case no. CV-03-565: first, there was the June 3, 2003, motion to dismiss or to change venue, and, second, there was the May 28, 2004, motion to dismiss on the ground of standing because, the motion argues, Terry, as a noncustodial parent, is not a proper plaintiff.
On June 21, 2004, the trial court entered a notation on the case-action summary sheet in case no. CV-03-565 stating: "Motion to Dismiss is Denied. Motion to Amend Complaint is Granted." On July 28, 2004, the Hospital and Pszyk filed a "Motion for Clarification, Alternatively to Reconsider and Supplement Motion to Dismiss, Alternatively Motion to Transfer." They sought clarification from the trial court as to which motion to dismiss it had ruled on-the one that alternatively sought a change of venue or the one that sought only a dismissal.
On September 13, 2004, the trial court entered an order on the case-action summary sheet, stating, in pertinent part:
 "[T]he motion to transfer is denied as the matter the subject of this suit arose in Jefferson County Bessemer Division. The matter is properly pleaded to bring the case in this Court. The individuals involved at [the] Hospital who are named in the complaint are not medical care providers and as such do not come under [the] Alabama Medical Liability Act. This was the ruling on 6/21/04 and the same ruling made in open court before this date."[3]
On October 12, 2004, the Hospital and Pszyk moved the court to reconsider the motion to change venue. The motion to reconsider was denied on October 20, 2004. On October 22, 2004, the Hospital and Pszyk petitioned this Court for the writ of *Page 5 
mandamus.[4]
The Hospital and Pszyk argue in the petition that the petition is timely in that they petitioned this Court within 42 days of the date on which the trial court "clearly stated that the Motion to Transfer Venue was denied, September 13, 2004." They further argue in their petition that, even if this Court concludes that the trial court had ruled on the motion on an earlier date, they petitioned this Court within a reasonable period under Rule 21, Ala. R.App. P., "due to the great deal of confusion associated with the two cases in question." They further argue:
 "Among the confusing aspects were (1) the fact that there were two pending cases and an issue of which of those two would go forward, (2) the fact that the trial court and the parties agreed that the threshold standing issue should be decided prior to any other issues, (3) the fact that the trial court was not specific or clear in its rulings, (4) the fact that all orders were only written as notations on the Case Action Summary Sheet, and (5) the fact that those entries were not placed in chronological order. The [Hospital and Pszyk] took every reasonable step to alleviate this confusion and clarify the trial court's rulings. Each of those steps was timely and appropriately made to ensure what matters were ruled upon, and therefore, ripe for appellate review. Finally, after numerous steps, the court made its decision clear on September 13, 2004. Upon such ruling, the [Hospital and Pszyk] filed this Petition."
On November 4, 2004, Terry moved to dismiss the Hospital and Pszyk's petition for the writ of mandamus, arguing that it was untimely. Terry argues that a motion to reconsider an interlocutory order does not toll the time for filing a petition for the writ of mandamus and that if a mandamus petition is filed outside the presumptively reasonable time, the petitioner must include in the petition an explanation of the circumstances constituting good cause for the delay in filing. See Ex parteTroutman Sanders, LLP, 866 So.2d 547, 549 (Ala. 2003). Terry further argues that the Hospital and Pszyk's statement in their petition of good cause is inadequate. In support of that argument Terry cites Ex parte Pelham Tank Lines, Inc., 898 So.2d 733,737 (Ala. 2004) (stating that the petitioner had failed to include a statement of good cause in its mandamus petition and that the statement included in the response to the motion to dismiss the petition was also inadequate because the petitioner did not address "the impact on the timely administration of justice in the trial court"). On November 12, 2004, the Hospital and Pszyk responded to Terry's motion to dismiss, reiterating their arguments that because the trial court's June 21, 2004, order was unclear as to which motion to dismiss it was ruling on, the mandamus petition was timely and, even if this Court determines that it was not filed within a presumptively reasonable time, there is good cause to allow the petition.
 Standard of Review
A petition for the writ of mandamus is the appropriate means by which to challenge a trial court's order regarding a change of venue. Ex parte Sawyer, 892 So.2d 898, 901 (Ala. 2004). The writ of mandamus is an extraordinary remedy; it will not be issued unless the petitioner shows "`"(1) a clear legal right in the *Page 6 
petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court."'" Ex parte Inverness Constr. Co.,775 So.2d 153, 156 (Ala. 2000) (quoting Ex parte Gates,675 So.2d 371, 374 (Ala. 1996)); Ex parte Pfizer, Inc.,746 So.2d 960, 962 (Ala. 1999).
 Analysis
We must first decide the threshold issue whether the Hospital and Pszyk's mandamus petition is timely. A motion for reconsideration of an interlocutory order does not toll the period for filing a petition for a writ of mandamus. Ex parteTroutman Sanders, LLP, supra. Under Rule 21(a), Ala. R.App. P., "[t]he presumptively reasonable time for filing a petition seeking review of an order of a trial court shall be the same as the time for taking an appeal." Moreover, "[i]f a petition is filed outside this presumptively reasonable time, it shall include a statement of circumstances constituting good cause for the appellate court to consider the petition, notwithstanding that it was filed beyond the presumptively reasonable time." Rule 21(a), Ala. R.App. P.
The Hospital and Pszyk argue that the trial court's June 21, 2004, order denying the motion to dismiss was unclear because, at the time the order was entered, two separate motions to dismiss were pending before the trial court and only one of those motions to dismiss sought, in the alternative, a change of venue. The Hospital and Pszyk further say that it was not until September 13, 2004, that the trial court entered its order expressly denying the motion to change venue and stating that it had intended to do so in its earlier order. Therefore, the Hospital and Pszyk argue, its petition for the writ of mandamus filed in this Court on October 22, 2004, was timely.
Terry argues that the Hospital and Pszyk should have petitioned this Court for the writ of mandamus after the trial court entered its June 21, 2004, order instead of filing a motion for clarification and waiting for the trial court to rule on that motion. In addition, Terry argues, under Pelham Tank Lines the Hospital and Pszyk's statement of good cause is insufficient.
Unlike the petitioners in Troutman Sanders and Pelham TankLines, the Hospital and Pszyk did include a statement of good cause in their petition for the writ of mandamus.[5] The Hospital and Pszyk stated that they were confused as to the scope of the trial court's June 21, 2004, order denying the motion to dismiss, and they stated the reasons for their confusion. Indeed, the trial court did not expressly deny the motion to change venue until September 13, 2004. The Hospital and Pszyk petitioned for the writ of mandamus within 42 days of the September 13, 2004, order; we do not see how the filing of the petition for the writ of mandamus within 42 days of the September 13, 2004, order as opposed to the June 21, 2004, order in order to allow the trial court to clarify what was intended by the June 21, 2004, order had any negative "impact on the timely administration of justice in the trial court" in this case. See Pelham Tank Lines,898 So.2d at 737 (quoting the Committee Comments to Rule 21, Ala. R.App. P.). We conclude that the Hospital and Pszyk's mandamus petition is timely, and we therefore deny Terry's motion to dismiss the petition. *Page 7 
As grounds for the issuance of the writ of mandamus, the Hospital and Pszyk argue (1) that § 6-5-546, Ala. Code 1975, a provision of the Alabama Medical Liability Act, § 6-5-540 et seq., Ala. Code 1975 ("the AMLA"), requires the trial court to transfer the case because the underlying acts or omissions occurred at the Hospital, which is located in Birmingham, and (2) that, even if the AMLA is not applicable to this case, venue in the Bessemer Division is limited to acts or omissions that occurred within the limits of the area of Jefferson County known as the Bessemer Cutoff, and the acts or omissions at issue in this case did not. See Ex parte Walter Indus., Inc.,879 So.2d 547 (Ala. 2003). Terry further argues that Pszyk and the DHR workers named as defendants are not health-care providers under the AMLA and that the actions complained of were not related to medical services provided by the Hospital, Pszyk, or the DHR workers. He also argues that, under general venue law, venue is proper in the Bessemer Division because, he says, the injuries that resulted in Austin's death occurred in the Bessemer Division and because two of the DHR workers, Sumerlin and Hood, are social workers employed by DHR in Bessemer.
The Hospital and Pszyk state that the claims alleged in this case stem from the allegedly negligent acts or omissions of a health-care provider; therefore, the Hospital and Pszyk argue, the injuries alleged in this case are violations of the AMLA and subject to § 6-5-546, Ala. Code 1975, which states, in pertinent part:
 "In any action for injury or damages or wrongful death whether in contract or in tort against a health care provider based on a breach of the standard of care, the action must be brought in the county wherein the act or omission constituting the alleged breach of the standard of care by the defendant actually occurred."
This Court has noted that the language of § 6-5-546 is mandatory; the trial court has no discretion as to venue. See Ex parteFontaine Trailer Co., 854 So.2d 71 (Ala. 2003); Ex parteBoshell, 805 So.2d 675 (Ala. 2001).
The Hospital and Pszyk argue that, because the acts or omissions constituting their alleged breach of the standard of care occurred in the Birmingham Division of the Jefferson Circuit Court, § 6-5-546 requires that the claims be brought in the Birmingham Division. In so arguing, the Hospital and Pszyk presume that the Bessemer Division and the Birmingham Division of the Jefferson Circuit Court are to be treated as separate counties for purposes of determining the propriety of venue under § 6-5-546. However, § 6-5-546 requires only that "the action must be brought in the county wherein the act or omission . . . actually occurred." (Emphasis added.)
It is not disputed that venue in this case is proper in Jefferson County. The issue before this Court is whether the claims are properly brought in the Bessemer Division or in the Birmingham Division of the Jefferson Circuit Court.[6] The *Page 8 
Hospital and Pszyk do not demonstrate, they only presume, that the requirement of § 6-5-546 that an action under the AMLA be brought "in the county wherein the act or omission . . . actually occurred" likewise requires that the action be brought in the judicial division in which the act or omission actually occurred.[7] Because the Hospital and Pszyk have not argued that § 6-5-546 requires that the Bessemer Division be treated as a separate county, they have not demonstrated a clear legal right to relief insofar as they argue that § 6-5-546 requires a transfer of the case to the Birmingham Division. Thus, we consider the Hospital and Pszyk's alternative argument that the general venue laws applicable to the Bessemer Division require a transfer of the case to the Birmingham Division.
We agree with the Hospital and Pszyk that venue is proper in the Bessemer Division only as to those claims that arise within the territorial boundaries of the Bessemer Division. See Exparte Walter Indus., 879 So.2d 547; Ex parte Central of GeorgiaRy., 243 Ala. 508, 10 So.2d 746 (1942). The burden on the Hospital and Pszyk is to demonstrate that the claims against them did not arise in the Bessemer Division.
In Ex parte Fields, 432 So.2d 1290 (Ala. 1983), this Court discussed in the context of the act creating the Bessemer Division of the Jefferson Circuit Court the question of where a cause of action "arises." The Jefferson County Planning and Zoning Commission had rezoned a parcel of property that lay within the Bessemer Division. Certain residents of the Bessemer Division challenged the rezoning ordinance in the Bessemer Division of the Jefferson Circuit Court. The defendant moved for a transfer of the case to the Birmingham Division, arguing that the cause of action did not "arise" in the Bessemer Division. In determining where the cause of action arose, this Court stated:
 "In Seaboard Surety Co. [v. William R. Phillips Co., 279 Ala. 510, *Page 9 187 So.2d 264 (1966)], this court applied the general principles regarding the place where a cause of action arises as expressed in 92 C.J.S. Venue § 80, in determining the jurisdiction of the Bessemer Division. This court said:
 "`At 92 C.J.S. Venue § 80, p. 776, speaking of statutes fixing venue as the county "where the cause of action arises" it is noted:
 "`"A cause of action, within the meaning of statutes fixing the venue as the county where the cause of action arises has been said to consist of a duty on the part of one toward another and the violation or breach of that duty, or of plaintiff's primary right and the act or omission of defendant. . . . It arises when that is not done which should have been done, or that is done which should not have been done. . . . [T]he cause of action accrues in the county in which defendant's wrongful act was done."
 "`Relating these general principles to the case at hand, it seems reasonable to us . . . that . . . the cause of action "arose" within the meaning of the Bessemer Division Act within the Bessemer Division.'
 "279 Ala. at 513, 187 So.2d at 267. These general principles control in the case before us. Applying these principles, we opine that the alleged wrong for which the petitioners seek redress occurred in the Birmingham Division, and, thus, the cause of action arose there."
432 So.2d at 1292-93. See also Winn-Dixie Montgomery, Inc. v.Bryant, 421 So.2d 1254, 1256 (Ala. 1982) (noting, in a case involving the act creating the Bessemer Division, that "a case arises wherever the alleged wrong occurs"). But cf. Ex parteCentral of Georgia Ry., 243 Ala. at 511, 10 So.2d at 748
(holding, without citing authority, that a wrongful-death action arose at the time and place of the fatal injury causing the death).
Terry complains of events that occurred while Austin was a patient at the Hospital. Specifically, Terry claims that the Hospital and Pszyk failed to exercise reasonable care in investigating allegations of abuse and in protecting Austin from abuse, that the Hospital and Pszyk should have identified the signs of abuse and reported the abuse when Austin was admitted to and treated at the hospital, that the Hospital and Pszyk should not have allowed Austin to be discharged from the hospital, and that their discharging him from the hospital placed Austin in a life-threatening situation.
Terry contends that, because the injures alleged to have been caused by Wesson in Bessemer resulted in Austin's eventual death at the Hospital in Birmingham, venue is proper in the Bessemer Division. However, under the principle of Ex parte Fields, we must consider where the alleged wrongful acts or omissions by the Hospital and by Pszyk occurred. Terry complains of events that occurred while Austin was a patient at the Hospital, which is located in the City of Birmingham. Thus, the cause of action did not "arise" within the Bessemer Division and venue therefore is proper in the Birmingham Division, and not in the Bessemer Division.
 Conclusion
We conclude that the Hospital and Pszyk have established a clear legal right to have Terry's claims against them transferred to the Birmingham Division of the Jefferson Circuit Court. We therefore grant the petition and issue the writ of mandamus, directing the trial court to vacate its September 13, 2004, order denying the Hospital's motion to change venue, and we direct the trial court to transfer the claims against the Hospital and Pszyk to *Page 10 
the Birmingham Division of the Jefferson Circuit Court.
MOTION TO DISMISS DENIED; PETITION GRANTED; WRIT ISSUED.
HARWOOD, STUART, SMITH, and BOLIN, JJ., concur.
NABERS, C.J., recuses himself.
[1] The record does not reflect that the trial court ruled on the Hospital's motion to reconsider.
[2] The amended complaint in case no. CV-03-565 that now names Terry, as Austin's personal representative, as the plaintiff alleges, among other claims: (1) that DHR employees negligently and/or wantonly failed to adequately and timely report, investigate, and otherwise act upon the allegations of abuse by failing to remove Austin from a life-threatening situation; (2) that the Hospital, Pszyk, and other fictitiously named defendants negligently and/or wantonly failed to adequately and timely report, investigate, and otherwise act upon the allegations of abuse by failing to remove Austin from a life-threatening situation; and (3) that Wesson had negligently assaulted Austin.
[3] To the extent that it can be inferred that the trial court is stating that it had ruled on the motion to change venue at the hearing on November 20, 2003, a reading of the transcript from the hearing does not support such a conclusion. In fact, the trial court expressly stated, "I will rule on the standing issue. And I will do it before I do anything about the transfer concerning the medical malpractice and let y'all file whatever y'all want to."
[4] The remaining defendants, the DHR employees, Tulle, Hood, and Sumerlin, and Phillips's boyfriend, Wesson, did not petition this Court for the writ of mandamus; therefore, we are not asked to address the propriety as to them of venue of this case in the Bessemer Division of the Jefferson Circuit Court.
[5] In Pelham Tank Lines, the petitioner included a statement of good cause in its brief in opposition to the motion to dismiss the mandamus petition as untimely.
[6] We recently decided Ex parte Haynes Downard Andra Jones,LLP, 924 So.2d 687 (Ala. 2005). In that case we held that the principle of ancillary venue does not apply to separate divisions of a county because Rule 82(c), Ala. R. Civ. P., refers only to the proper "county"; it does not refer to judicial districts within a county. ("`Where several claims or parties have been joined, the suit may be brought in any county in which any one of the claims could properly have been brought. Whenever an action has been commenced in a proper county, additional claims and parties may be joined . . . as ancillary thereto. . . .'"924 So.2d at 692 (quoting Rule 82(c)) (emphasis added).)
Section 6-3-7(d), Ala. Code 1975, provides that "in any county having two courthouses, the divisions shall be treated as two separate judicial districts for purposes of venue and for purposes of any change or transfer of venue. . . ." We have rejected the argument that § 6-3-7(d) requires general venue laws to apply to the Bessemer Division as though it were a separate county. Ex parte Haynes Downard, 924 So.2d at 696; Ex parteHanna Steel, 905 So.2d 805, 809 (Ala. 2004) ("to reach such a result, we would have to overrule our recent decision in WalterIndustries, decided after the enactment of § 6-3-7(d) and citing with approval the construction of the Bessemer Act in Central ofGeorgia Railway"). Instead, we adhere to the rule stated in Exparte Walter Indus., Inc., 879 So.2d at 549-51, and Ex parteCentral of Georgia Ry., 243 Ala. 508, 10 So.2d 746 (1942). Thus, in determining whether venue is proper in the Bessemer Division, the court first asks whether venue is proper in Jefferson County under the applicable venue laws. Ex parte Alabama Mobile Homes,468 So.2d 156 (Ala. 1985). If it is, the court then determines in which division venue is proper: "the Bessemer Division can hear only cases that have `arisen' within the territorial boundaries of that division." Walter Indus., 879 So.2d at 551. If the cause of action did not arise within the territorial boundaries of the Bessemer Cutoff, then venue is in the Birmingham Division.
[7] We note that Section 2 of Act No. 99-249, Ala. Acts 1999, which enacted § 6-3-7(d), provides:
 "All laws and parts of laws in this chapter that are in conflict with any of the provisions of this act shall be and are, to the extent of the conflict, repealed, and Section 6-3-5, Code of Alabama 1975, is specifically repealed; provided however, that nothing herein shall change, amend or otherwise affect more specific provisions in other chapters which provide for where actions may be filed, and without limitation, this act shall not repeal, alter or otherwise affect the provisions of Section 6-5-546
or Section 6-3-11, Code of Alabama 1975."
(Emphasis added.)