LYONS, Justice
(dissenting).
Act No. 213, Ala. Local Acts 1919 (“the Bessemer Act”), divides Jefferson County into two divisions — the Birmingham Division and the Bessemer Division. The main opinion endorses a construction of the Bessemer Act that leads to a result that discriminates against persons whose claims arise in the Bessemer Division. Although a person has the statistical possibility of suffering an injury giving rise to a claim wherever that person goes, as a practical matter, people are more frequently present in the locale in which they reside and therefore are more likely to suffer an injury .in that locale. I therefore address the effect of the majority’s decision in terms of its impact on residents of the two divisions of Jefferson County.
Pursuant to the Bessemer Act, a person residing in the Birmingham Division cannot commence an action in the Birmingham Division if that action arises in the Bessemer Division, without being subjected to a motion to dismiss for improper venue. By the same token, a person residing in the Bessemer Division cannot commence an action in the Bessemer Division if that action arises in the Birmingham Division, without being subjected to a motion to dismiss for improper venue. So far, a resident of the Birmingham Division and a resident of the Bessemer Division have a fair and equal exchange of benefits and burdens. But, under this Court’s construction of the Bessemer Act, the rights available to a resident of the Birmingham Diyision are far greater than those available to a resident of the Bessemer Division.
A resident of the Birmingham Division filing an action relating to a claim that arises in the Birmingham Division will be entitled to the full panoply of Alabama venue laws. For example, suppose the Birmingham plaintiff desires to join code-fendants and, as to one of them, venue in the Birmingham Division is improper. That plaintiff has no problem because Rule 82(c), Ala. R. Civ. P., with its concept of pendent venue, is available to permit join-der of such codefendants for claims brought in the Birmingham Division. Suppose the Birmingham plaintiff would like to commence an action joining with a co-plaintiff as to whom venue in the Birmingham Division is not generally appropriate. Once again, there is no problem, because § 6-3-7(c), Ala.Code 1975, permits joinder of coplaintiffs so long as the requirements set forth in the statute can be satisfied. Suppose the Birmingham plaintiff is injured in an automobile accident in Shelby County involving a defendant who resides in Jefferson County. Section 6-3-2(a)(3), Ala.Code 1975,[8] permits the Birmingham plaintiff to file the action in the Birming *119 ham Division. Further, regardless of whether the claim in any action filed by a resident of the Birmingham Division arose in that division or elsewhere, when the case is tried, the jury will be selected from among other persons similarly situated, that is, other residents of the Birmingham Division.
Those citizens who happen to reside in the Bessemer Division are not entitled to the same treatment; indeed, they are treated as second-class citizens. For example, suppose the Bessemer plaintiff, suing on a claim arising in the Bessemer Division, desires to join codefendants and, as to one of them, venue in the Bessemer Division is improper. That plaintiff has a problem because Rule 82(c), with its concept of pendent venue, is not available to permit joinder of such codefendants for claims brought in the Bessemer Division. Ex parte Haynes Downard Andra & Jones, LLP, 924 So.2d 687 (Ala.2005). Suppose the Bessemer plaintiff, suing on a claim arising in the Bessemer Division, would like to commence an action with a coplaintiff aligned with him but as to whom venue is not appropriate in the Bessemer Division and whose claim did not arise either in the Bessemer Division or the Birmingham Division. The main opinion holds that the circumstances described in § 6-3-7(c) that might otherwise make venue in the Bessemer Division proper are unavailable.[9] Further, for any claim that does not arise in either the Bessemer Division or the Birmingham Division but as to which venue is appropriate in Jefferson County, a resident of the Bessemer Division asserting such a claim who desires to sue in Jefferson County must commence the action in the Birmingham Division. Ex parte Walter Indus., Inc., 879 So.2d 547 (Ala.2003). In that situation, the resident of the Bessemer Division, unlike his counterpart in the Birmingham Division, must select a jury from the .Birmingham Division, a part of the county separate from where the plaintiff resides. In other words, he is deprived of a jury of his peers.
Bessemer residents are under these circumstances the victims of discriminatory treatment. To avoid a charge of violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, one must find a rational basis for disparate treatment. In Fitzgerald v. Racing Association of Central Iowa, 539 U.S. 103, 107, 123 S.Ct. 2156, 156 L.Ed.2d 97 (2003), the Supreme Court, quoting from Nordlinger v. Hahn, 505 U.S. 1, 11-12, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992), stated:
“ ‘[T]he Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational.’ ”
*120 Before we even get to the question whether the Alabama Legislature in 1919 had a plausible policy reason for establishing a system that blatantly favors Birmingham Division residents over Bessemer Division residents, we must consider the fundamental question whether the disparate treatment is required by the terms of the Bessemer Act. We are obliged to interpret the Bessemer Act in a manner, if possible, that avoids an unconstitutional result. State Bd. of Health v. Greater Birmingham Ass’n of Home Builders, Inc., 384 So.2d 1058, 1061 (Ala.1980) (“We will not invalidate a statute on constitutional grounds if by reasonable construction it can be given a field of operation within constitutionally imposed limitations.”). If we can say that the discriminatory treatment is not warranted by the text of the statute then we need not search for a rational basis.
The Bessemer Act, at § 2, provides:
“The said Circuit Court [for the Bessemer Division], holding at Bessemer, as in this Act provided, shall have, exercise and possess all of the jurisdiction and powers which are now or which may hereafter be conferred by law on the several Circuit Courts of this State, which said jurisdiction and powers shall be exclusive in, limited to, and extend over that portion of the territory of the County of Jefferson, which is included in the following precincts, to-wit: [physical description of the Bessemer Division] and from and over the above mentioned and described territory all jurisdiction and powers heretofore or now exercised or existing therein by the Circuit Court of [Jefferson County,] as now held at Birmingham, is hereby expressly excluded.”
(Emphasis added.)
Section 2 does not, however, comprise the entire Act. Section 6 of the Bessemer Act states:
“That the Circuit Court of the Tenth Judicial Circuit holding at Bessemer, as in this Act provided for, shall, when not in conflict with the provisions hereof, be governed by the same rules, general, local, and special laws as govern the said circuit court when holding at Birmingham; but this shall not be construed as prohibiting a Judge of said court holding court at Bessemer, as in this Act provided for, from promulgating other and different rules governing the practice and procedure in and for said court holding at Bessemer; and all local, special and general laws applicable to the Circuit Court of the Tenth Judicial Circuit holding at Birmingham shall be applicable to said Circuit Court holding at Bessemer, when not in conflict with any provisions of this Act, nor with any law or part of a law applicable alone to courts not held at a county site.”
(Emphasis added.)
A reasonable construction of the Bessemer Act leads to the conclusion that the Bessemer Division was not intended to be an illegitimate stepchild of a court, but a court with all of the jurisdiction and powers of any other circuit court; however, the cases falling within its jurisdiction are exclusive of any jurisdiction in the Birmingham Division and vice versa. The main opinion seizes upon the provision for exclusivity vis-a-vis the Birmingham Division and elevates it to an exclusivity vis-a-vis any other court in the State, contrary to the text of §§ 2 and 6.
I would apply §§ 2 and 6 in a manner that permits the provisions for joinder of claims in § 6-3-7(c) to operate to allow the joinder of claims arising in Tuscaloosa County with the claims arising in the Bessemer Division. Such an application does no violence whatsoever to the exclusion in *121 § 2 of claims arising in the Birmingham Division from being heard in the Bessemer Division and vice versa. Such a construction is mandated by the phraseology in § 2 that the Bessemer Division “shall have, exercise and possess all of the jurisdiction and powers which are now, or which may hereafter be conferred by law on the several Circuit Courts of this State” and the text of § 6 providing “[t]hat the Circuit Court of the Tenth Judicial Circuit holding at Bessemer, as in this Act provided for, shall, when not in conflict with the provisions hereof, be governed by the same rules, general, local, and special laws as govern the said circuit court when holding at Birmingham.” The several circuits of the state enjoy the availability of § 6-3-7(c); so should the Bessemer Division.
The main opinion at footnote 7 refers to the “significant advantages” available to residents of the Bessemer Division, if a claim arises in the Bessemer Division, in being able to “litigate that case in the Bessemer Division before a jury selected exclusively from that Division,” in having “the benefit of judges dedicated to cases arising in that Division,” and in having “the convenience of a special local courthouse.” 961 So.2d at 117-18 n. 7. The flip side is that under the Bessemer Act, residents of the Birmingham Division enjoy these exact same “advantages” — litigation of a claim arising in the Birmingham Division before a jury selected exclusively from residents of that Division, judges dedicated to cases arising in that Division, and the convenience of a local courthouse. But the rest of the story reflects that the Birmingham Division residents enjoy all those perks plus the applicability of the venue laws of this state, a circumstance which cannot be said of residents of the Bessemer Division.
Moreover, although the main opinion observes that “[n]o such arguments were made to this Court by any party,” 961 So.2d at 117-18 n. 7, this Court is issuing a writ of mandamus, which has the effect of reversing the judgment of the trial court, and, in so doing, it finds that the defendants have a clear legal right to an interpretation. of the Bessemer Act that not only conflicts with the express language of the Bessemer Act but also, I respectfully submit, violates the Equal Protection Clause of the Fourteenth Amendment. Our cases repeatedly have refused to issue the writ of mandamus when the petitioner has not shown a clear legal right to the relief sought. See, e.g., F.L. Crane & Sons, Inc. v. Malouf Constr. Corp., 953 So.2d 366 (Ala.2006).
The views I express here are consistent with those expressed in my dissenting opinion in Ex parte Walter Industries, Inc., 879 So.2d at 557:
“Rather than apply to significantly different circumstances what is at best a less than obvious response to a legislative command, I would interpret § 2 of the Act as though it created a separate county for venue purposes in the context of claims not arising in Jefferson County. Section 2, after having provided that ‘jurisdiction and power shall be exclusive in, limited to, and extend over that portion of the territory of [the Bessemer Cutoff,]’ concludes with the statement that ‘all jurisdiction and power exercised therein at the time of the passage of this act by the circuit court of Jefferson county, as now held at Birmingham, and the common law jurisdiction and power of the city court of Birmingham is hereby expressly excluded.’ (Emphasis added.) I would interpret the references to exclusivity in § 2 as exclusive of that portion of Jefferson County not in the Bessemer Cutoff, and not exclusive of claims that might otherwise be appropriate under general venue laws not in *122 conflict with the provisions for exclusivity within the divisions of Jefferson County. Under this construction of § 2, citizens residing in the Bessemer Cutoff would enjoy the same venue privileges of all other citizens with respect to claims arising outside of the county in which they reside.”
But our cases have interpreted the Bessemer Act in a manner that engrafts limitations on venue not readily apparent from the text of the Bessemer Act. We can either put our eyes out tracing the threads of decisions over the years and weaving them into the result we reach today, or we can recognize that we have created a monster and that it is time for it to be slain. Further, we should not worship at the altar of stare decisis in order to perpetuate a discriminatory treatment of citizens residing in separate parts of the same county, contrary to a reasonable construction of §§ 2 and 6. See Ex parte Quality Cas. Ins. Co., 962 So.2d 242, 247 (Ala.2006):
“This Court has great respect for the doctrine of stare decisis; at the same time, ‘we should not blindly continue to apply a rule of law that does not accord with what is right and just.’ Ex parte State Farm Fire & Casualty Co., 764 So.2d 543, 545 (Ala.2000).
“ ‘ “The doctrine of stare decisis tends to produce certainty in our law, but it is important to realize that certainty per se is but a means to an end, and not an end in itself. Certainty is desirable only insofar as it operates to produce the maximum good and minimum harm and thereby to advance justice.... When it appears that the evil resulting from a continuation of the accepted rule must be productive of greater mischief to the community than can possibly ensue from disregarding the previous adjudications on the subject, courts have frequently and wisely departed from precedent, 14 Am.Jur., Courts, § 126.” ’
“State Farm, 764 So.2d at 545 n. 3 (quoting Fox v. Snow, 6 N.J. 12, 25, 76 A.2d 877, 883-84 (1950)).”
Under a construction of the Bessemer Act faithful to its text, we are spared an imaginative and creative exercise in trying to come up with a rational basis for significantly disfavoring citizens of Bessemer in 1919 at their newly recognized courthouse. I must therefore respectfully dissent.
PARKER, J., concurs.

. Section 6-3-2(a)(3) states:
"(a) In proceedings of a legal nature against individuals:
"(1) All actions for the recovery of land, of the possession thereof or for a trespass thereto must be commenced in *119 the county where the land or a material part thereof lies.
"(2) All actions on contracts, except as may be otherwise provided, must be commenced in the county in which the defendant or one of the defendants resides if such defendant has within the state a permanent residence.
"(3) All other personal actions, if the defendant or one of the defendants has within the state a permanent residence, may be commenced in the county of such residence or in the county in which the act or omission complained of may have been done or may have occurred.”

. We are not here confronted with the entirely different circumstance of an attempted joinder of a coplaintiff pursuant to § 6-3-7(c) whose claim arose in the Birmingham Division, because the claims of the coplaintiffs in this proceeding arose in Tuscaloosa County.