924 So.2d 687 (2005)
Ex parte HAYNES DOWNARD ANDRA & JONES, LLP, and Lewis F. Jones.
(In re Bobby Little et al.
v.
Southeastern Commercial Finance et al.)
1040657.
Supreme Court of Alabama.
July 29, 2005.
As Modified on Denial of Rehearing September 30, 2005.
*690 Robert K. Spotswood, Kenneth D. Sansom, and Michael T. Sansbury of Spotswood, LLC, Birmingham, for petitioners.
Bill Thomason, Becky Thomason, and Clay J. Thomason of Thomason, Maples & Allsup, LLC, Bessemer, for respondents.
HARWOOD, Justice.
Haynes Downard Andra & Jones, LLP ("the partnership"), and Lewis F. Jones, one of its partners (hereinafter jointly referred to as "Haynes Downard"), defendants in an action pending in the Jefferson Circuit Court, petition for a writ of mandamus directing the Bessemer Division of the Jefferson Circuit Court (1) to sever the claims filed against Haynes Downard from claims filed against other defendants and (2) to transfer those claims, once severed, to the Birmingham Division of the Jefferson Circuit Court. We grant the petition and issue the writ.

Facts and Procedural History
The action underlying this petition comprises 17 claims filed by 5 plaintiffs against 15 defendants. The partnership and Jones are 2 of the 15 defendants. The partnership is a Birmingham accounting firm organized as a limited liability partnership, composed of four partners, including Jones. The action was filed by RockSolid Industries, LLC, and its four incorporators (hereinafter collectively "RockSolid").
The incorporators formed RockSolid Industries in order to purchase the assets of Grasselli Concrete Products Company ("Grasselli"), which manufactured colored concrete blocks. Grasselli's plant is located in Bessemer. Before the purchase, during the performance of their due-diligence investigation, the incorporators began collecting data from various parties concerning Grasselli's financial condition. To this end, the incorporators obtained permission to speak with Jones concerning the partnership's assessment, done at the request of another party, of Grasselli's financial condition. On September 13, 2001, after deciding to purchase Grasselli's assets, the incorporators organized RockSolid Industries; its principal place of business was located in Bessemer. Fifteen days later, on September 28, RockSolid Industries purchased Grasselli's assets. For a variety of reasons not currently before us, however, RockSolid Industries ultimately failed.
RockSolid's complaint first alleges that the partnership and Jones fraudulently misrepresented Grasselli's financial health in financial statements they prepared and that the incorporators relied on the financial statements to their detriment. RockSolid Industries' complaint further alleges that, in the midst of RockSolid Industries' collapse, Jones and the partnership made additional fraudulent misrepresentations to *691 RockSolid, this time concerning the operating capital that would be needed to sustain the business. By September 2003, RockSolid Industries' collapse was complete; it ceased doing business, laid off its remaining employees, and closed its doors.
According to an affidavit subscribed and sworn to by Jones, the truth of which the plaintiffs do not challenge, all allegations of misrepresentations by Jones individually or acting on behalf of the partnership made by RockSolid in its complaint stem from events occurring solely within the Birmingham Division of Jefferson County. Specifically, Jones states that all communication with the incorporators and RockSolid Industries after it was incorporated, as well as the generation of all financial data that was communicated to them, occurred from Haynes Downard's office located in downtown Birmingham. The only event that transpired within the Bessemer Division was "field work" at Grasselli's plant in Bessemer, and it entailed no communications with RockSolid.
On April 23, 2004, RockSolid sued the partnership, Jones, and the 13 additional defendants in the Bessemer Division of the Jefferson Circuit Court. Beyond the allegations detailed above, RockSolid specifically alleged that the partnership had been negligent or wanton in hiring, retaining, and supervising Jones.
Haynes Downard timely served a motion requesting, among other relief, the trial court to sever the claims filed against Haynes Downard and transfer those claims to the Birmingham Division of the Jefferson Circuit Court. After the parties filed briefs supporting and opposing the motion, and after oral argument on the motion, which was not transcribed, the trial court denied the motion to sever and to transfer. Haynes Downard then timely filed this mandamus petition.

Standard of Review
"`The question of proper venue for an action is determined at the commencement of the action.' Ex parte Pratt, 815 So.2d 532, 534 (Ala.2001). `If venue is not proper at the commencement of an action, then, upon motion of the defendant, the action must be transferred to a court where venue would be proper.' Ex parte Overstreet, 748 So.2d 194, 196 (Ala.1999). `A petition for a writ of mandamus is the appropriate means for challenging a trial court's refusal to transfer an action and such a petition is due to be granted if the petitioner makes a clear showing of error on the part of the trial court.' Ex parte Alabama Power Co., 640 So.2d 921, 922 (Ala.1994). `In considering a mandamus petition, we must look at only those facts before the trial court.' Ex parte American Res. Ins. Co., 663 So.2d 932, 936 (Ala.1995)."
Ex parte Walter Indus., Inc., 879 So.2d 547, 548-49 (Ala.2003). The petitioner for the writ of mandamus has the additional burden of showing
"`"(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court."'"
Ex parte Crawford Broad. Co., 904 So.2d 221, 224 (Ala.2004)(quoting Ex parte Perfection Siding, Inc., 882 So.2d 307, 309-10 (Ala.2003)(quoting in turn Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995))).

Analysis
This Court has recently decided several cases discussing the "unique legal status" of the Bessemer Division of the Jefferson Circuit Court, all of which reaffirmed the rule that venue is proper in the *692 Bessemer Division only if a case "arises" within the territory of that division. Ex parte Hanna Steel Corp., 905 So.2d 805, 808 (Ala.2004); Ex parte DaimlerChrysler Corp., 899 So.2d 928, 938 (Ala.2004); Ex parte State Farm Mut. Auto. Ins. Co., 893 So.2d 1111, 1114 (Ala.2004); and Ex parte Walter Indus., Inc., 879 So.2d at 549-51. As explained in identical phrasing in both DaimlerChrysler, 899 So.2d at 938, and Hanna Steel, 905 So.2d at 808, this Court in Walter Industries "reiterated the rule expressed in Ex parte Central of Georgia Ry., 243 Ala. 508, 10 So.2d 746 (1942), that the jurisdiction granted to the Bessemer Division is limited to those cases arising in that division." (Footnote in Daimler-Chrysler omitted.) Thus the rule has a lineage of over 60 years. RockSolid argues that because the complaint asserts claims against parties other than Haynes Downard, as to whom venue is proper in the Bessemer Division, the claims against Haynes Downard are properly joined in the Bessemer Division by virtue of ancillary venue under Rule 82(c), Ala. R. Civ. P.
Rule 82(c) provides:
"Where several claims or parties have been joined, the suit may be brought in any county in which any one of the claims could properly have been brought. Whenever an action has been commenced in a proper county, additional claims and parties may be joined, pursuant to Rules 13, 14, 22, and 24, as ancillary thereto, without regard to whether that county would be a proper venue for an independent action on such claims or against such parties."
Although Rule 82(c) does state Alabama's principle of ancillary venue, as the defendants point out the rule explicitly discusses intercounty venue issues, not venue issues as between judicial divisions of a county. The issue before this Court is not whether these claims are properly within Jefferson County; the issue rather is whether the claims arising out of conduct that occurred in the Birmingham Division may be properly brought within the Bessemer Division.
As we explained in Southeastern Meats of Pelham, Inc. v. City of Birmingham, 895 So.2d 909, 913 (Ala.2004):
"`[T]he construction of rules of court are for the court which promulgated them.' Alabama Public Serv. Comm'n v. Redwing Carriers, Inc., 281 Ala. 111, 115, 199 So.2d 653, 656 (1967). `We start with the basic premise that words used in court rules must be given their plain meaning.' Nieto v. State, 842 So.2d 748, 749 (Ala.Crim.App.2002). In construing a rule promulgated by this Court, effect must be given to `each word, phrase, and clause.' State v. Old West Bonding Co., 203 Ariz. 468, 471, 56 P.3d 42, 45 (Ct.App.2002)."
We must, therefore, give effect to the choice of words in Rule 82(c), which provides for ancillary venue only between counties, not within a county. Concluding, then, that the principle of ancillary venue does not apply to the separate divisions of a county, we hold that any claim against a party arising in Jefferson County that does not arise within the Bessemer Division of the Jefferson Circuit Court is subject to transfer to the Birmingham Division under Ala.Code 1975, § 12-11-11.[1]
RockSolid next argues that its claims against Haynes Downard arise in the Bessemer Division because "[i]n this case, the alleged wrongs occurred, at least *693 in part, in the Bessemer Division," inasmuch as RockSolid's "injuries occurred in Bessemer where RockSolid failed, and therefore [RockSolid's] cause of action arose there." (RockSolid's brief, p. 11.) In Walter Industries, this Court quoted as controlling the following passage from Ex parte Fields, 432 So.2d 1290, 1292-93 (Ala. 1983):
"`In Seaboard Surety Co. [v. William R. Phillips & Co., 279 Ala. 510, 187 So.2d 264 (1966)], this court applied the general principles regarding the place where a cause of action arises as expressed in 92 C.J.S. Venue § 80, in determining the jurisdiction of the Bessemer Division. This court said:
"`"At 92 C.J.S. Venue § 80, p. 776, speaking of statutes fixing venue as the county `where the cause of action arises' it is noted:
"`"`A cause of action, within the meaning of statutes fixing the venue as the county where the cause of action arises has been said to consist of a duty on the part of one toward another and the violation or breach of that duty, or of plaintiff's primary right and the act or omission of defendant.... It arises when that is not done which should have been done, or that is done which should not have been done.... [T]he cause of action accrues in the county in which defendant's wrongful act was done.'
"`"Relating these general principles to the case at hand, it seems reasonable to us ... that ... the cause of action `arose' within the meaning of the Bessemer Division Act within the Bessemer Division."
"`279 Ala. at 513, 187 So.2d at 267. These general principles control in the case before us. Applying these principles, we opine that the alleged wrong for which the petitioners seek redress occurred in the Birmingham Division, and, thus, the cause of action arose there.'"
879 So.2d at 552. In Walter Industries we also cited Winn-Dixie Montgomery, Inc. v. Bryant, 421 So.2d 1254, 1256 (Ala.1982), for the statement that "`a case arises wherever the alleged wrong occurs.'" 879 So.2d at 552.
RockSolid relies on Ex parte Birmingham Southern R.R., 473 So.2d 500, 501 (Ala.1985), for the statement that a personal-injury action asserted against Birmingham Southern Railroad arose in the Bessemer Division because "a personal injury action arises where the injury occurs." However, in Ex parte Graham, 634 So.2d 994, 997 (Ala.1993), we stated:
"We now bring focus to these holdings by establishing the following interpretation of § 6-3-7 [the venue statute for corporations]: In personal injury actions where the defendant's wrongful act or omission causes the plaintiff to suffer mental and/or emotional distress, or other nonbodily injuries, the injury occurs in the county where the defendant's wrongful act or omission occurred. In personal injury actions where the defendant's wrongful act or omission causes bodily harm to the plaintiff, the injury occurs in the county where the bodily harm occurs."
Accordingly, although a fraud action is a personal-injury action for purposes of venue law (see Ex parte Mitchell, 690 So.2d 356, 358 (Ala.1997)), the rule of Ex parte Birmingham Southern R.R., relied on by RockSolid, would not apply to place venue for a fraud action involving nonbodily injuries in the division in which the injury occurred. Thus, even if we were to consider the principle of general venue law stated in Ex parte Birmingham Southern R.R. to be applicable in this case, the distinction explained in Ex parte Graham *694 between personal-injury actions resulting in bodily injuries and those resulting in nonbodily injuries would render the place where the injury allegedly occurred immaterial. Moreover, as is true for any tort cause of action, a fraud claim fully accrues once any legally cognizable damage has proximately resulted, i.e., once the plaintiff has "detrimentally" relied on the fraud; the fact that additional or different damage subsequently materializes does not alter the fact that a legally cognizable injury has already occurred. Gilmore v. M & B Realty Co., 895 So.2d 200, 208 (Ala. 2004). Thus, the cause of action for fraud as alleged by RockSolid against Haynes Downard accrued once RockSolid Industries purchased Grasselli's allegedly misrepresented assets on September 28, 2001. The subsequent failure of RockSolid Industries in 2002 simply represented additional damage. RockSolid argues alternatively, without citing any authority, that "[f]or purposes of determining where a cause of action arises under the Bessemer act,[[2]] this Court should look at the entire case, including all claims properly joined pursuant to Rule 20 [Ala. R. Civ. P.], in determining whether venue is proper in [the] Bessemer [Division]." This argument was never presented to the trial court, but, "[s]ubject to limited exceptions, an appellate court will affirm a summary judgment on the basis of a law or legal principle not invoked by the moving party or the trial court, even though an appellate court will not reverse a summary judgment on the basis of a law or legal principle not first argued to the trial court by the nonmoving party." Vesta Fire Ins. Corp. v. Milam & Co. Constr., 901 So.2d 84, 104 (Ala.2004)(footnote omitted). Although Rule 20, Ala. R. Civ. P., permits the joinder of multiple parties as plaintiffs and defendants, it does not prescribe a venue for the resulting multiparty action. In Ex parte Hanna Steel Corp., supra, we implicitly rejected the argument RockSolid now advances. In Hanna Steel, several residents of the Birmingham Division of Jefferson County sued, in the Bessemer Division, nine companies they claimed had discharged polluting substances into the atmosphere, ultimately damaging the persons and residences of the plaintiffs. The plaintiffs argued that "venue is proper in the Bessemer Division because three of the businesses have plants located on property that is in the Bessemer Division... [and] the alleged wrongful acts of three of the businesses occurred in the Bessemer Division...." 905 So.2d at 807. This Court granted the defendants' petition for the writ of mandamus, directing the trial court to transfer the action from the Bessemer Division to the Birmingham Division of the Jefferson Circuit Court, explaining, as we noted earlier, that in Walter Industries the Court had "reiterated the rule expressed in Ex parte Central of Georgia Ry., 243 Ala. 508, 10 So.2d 746 (1942), that the jurisdiction granted to the Bessemer Division is limited to those cases arising in that division." 905 So.2d at 808. If the court in Hanna Steel did not permit venue to proceed in the Bessemer Division, when the wrongful conduct of three of the nine defendants joined in one case under Rule 20 occurred in the Bessemer Division, it likewise cannot do so as to Haynes Downard in this case simply because the wrongful conduct of some of Haynes Downard's codefendants is alleged to have occurred in the Bessemer Division.
RockSolid argues that § 6-3-7(d), Ala. Code 1975, should be read "as requiring *695 that the general venue laws be applied to the Bessemer Division as though it was a separate County." (RockSolid's brief, p. 12.) This same argument was presented to the Court in Hanna Steel, supra, and we rejected it on the basis that "to reach such a result, we would have to overrule our recent decision in Walter Industries, decided after the enactment of § 6-3-7(d) and citing with approval the construction of the Bessemer Act in Central of Georgia Railway. However, despite their extensive criticism of Walter Industries, the residents never ask us to overrule Walter Industries or Central of Georgia Railway." 905 So.2d at 809. Accordingly, on the authority of Walter Industries and Central of Georgia Railway, we declined to entertain the argument concerning § 6-3-7(d) that the plaintiffs in Hanna Steel advanced. RockSolid, however, unlike the plaintiffs in Hanna Steel, specifically argues that this Court in implementing § 6-3-7(d) should overrule its holdings in Central of Georgia Railway and Walter Industries. (RockSolid's brief, p. 12.)
Section 6-3-7(d) is a feature of the complete revision of § 6-3-7 undertaken by the Alabama Legislature in 1999. The new version of § 6-3-7 as thus rewritten reads as follows:
"(a) All civil actions against corporations may be brought in any of the following counties:
"(1) In the county in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of real property that is the subject of the action is situated; or
"(2) In the county of the corporation's principal office in this state; or
"(3) In the county in which the plaintiff resided, or if the plaintiff is an entity other than an individual, where the plaintiff had its principal office in this state, at the time of the accrual of the cause of action, if such corporation does business by agent in the county of the plaintiff's residence; or
"(4) If subdivisions (1), (2), or (3) do not apply, in any county in which the corporation was doing business by agent at the time of the accrual of the cause of action.
"(b) The residence of only any properly joined named class representative or representatives may be considered in determining proper venue in a class action. The residency of any putative or actual member of a class other than a named representative shall not be considered in determining proper venue for a class action.
"(c) Anything to the contrary in Rule 82(c) of the Alabama Rules of Civil Procedure notwithstanding, in any action against a corporation, venue must be proper as to each and every named plaintiff joined in the action, unless the plaintiffs shall establish that they assert any right to relief jointly, severally, or arising out of the same transaction or occurrence and that the existence of a substantial number of questions of law or material fact common to all those persons not only will arise in the action, but also: (1) that such questions will predominate over individualized questions pertaining to each plaintiff; (2) [that] the action can be maintained more efficiently and economically for all parties than if prosecuted separately; and (3) that the interest of justice supports the joinder of the parties as plaintiffs in one action. If venue is improper for any plaintiff joined in the action, then the claim of any such plaintiff shall be severed and transferred to a court where venue is proper. In the event severance and transfer is mandated and venue is *696 appropriate in more than one court, a defendant sued alone or multiple defendants, by unanimous agreement, shall have the right to select such other court to which the action shall be transferred and, where there are multiple defendants who are unable to agree upon a transferee court, the court in which the action was originally filed may transfer the action to any such other court. Transfer of the action and notice thereof shall be in accord with Section 6-3-22.
"(d) Notwithstanding Section 6-3-10, or any local laws relating to venue, in any county having two courthouses, the divisions shall be treated as two separate judicial districts for purposes of venue and for purposes of any change or transfer of venue, unless the jury venire is drawn from throughout the entire county."
It is to be noted that other than in subdivision (d), the legislature identified the "county" as the operative geographical unit. Only in subdivision (d) did the legislature specify that "the divisions shall be treated as two separate judicial districts for purposes of venue and for purposes of any change or transfer of venue...." (Emphasis supplied.) Therefore, whereas RockSolid argues that subdivision (d) requires that the Bessemer Division be treated as though it was a "separate county," the legislature eschewed that terminology, opting instead to state that the divisions should be treated as "two separate judicial districts." Our task is to determine what the legislature meant by the phrase "judicial districts."
In Ex parte Longmire, 584 So.2d 503 (Ala.1991), the Court addressed the status of the two judicial divisions created in St. Clair County by local legislation. St. Clair County is one of six counties in Alabama for which the legislature has created two divisions: Barbour, Coffee, Jefferson, Marshall, St. Clair, and Tallapoosa. Only in Marshall County and St. Clair County, however, do the two judicial divisions draw their juries from throughout the entire county; the two judicial divisions created for Barbour County, for Coffee County, for Jefferson County, and for Tallapoosa County each draw their juries only from within the particular judicial division. See Walter Industries, supra; Hanna Steel, supra; Bentley v. State, 450 So.2d 197 (Ala.Crim.App.1984) (Marshall County); Ex parte Humana, Inc., 462 So.2d 922 (Ala.1985) (Coffee County); Ex parte Chrysler Corp., 659 So.2d 113 (Ala.1995) (Barbour County); Longmire, supra (St. Clair County); and Act No. 337, Ala. Local Acts 1923 (Tallapoosa County). In Longmire, this Court held that because the local act creating the separate judicial divisions in St. Clair County did not contain language similar to that in the Bessemer Act whereby the "jurisdiction and powers" of the Bessemer Division were to be "exclusive in, limited to, and [to] extend over" only certain territorial portions of Jefferson County; because the local act creating the separate judicial divisions in St. Clair County did not provide for two separate clerks' offices; and because the local act creating the separate judicial divisions in St. Clair County provided that jurors serving in each division would be drawn from the entire county, the St. Clair Act did "not create two separate judicial districts for purposes of venue. The Act divides St. Clair County into two judicial divisions, apparently for purposes of economy and convenience. The language of the Act is not restrictive and exclusive, as is the language of the Bessemer Act." 584 So.2d at 505. Thus, by implication, the Bessemer Act was viewed as creating "two separate judicial districts for purposes of venue," and we note that this is the exact phrasing *697 the legislature subsequently employed in subdivision (d).
In Ex parte Chrysler Corp., supra, this Court was called upon to determine the implications of the legislation dividing Barbour County into two judicial divisions  "the Clayton Division" and "the Eufaula Division"  for certain purposes. The Court focused on the fact that the legislation did not require that a civil action be brought in one or the other of the two divisions, but simply provided, as pertinent to the facts then before the Court, that a civil cause pending in the Clayton Division could not be tried in the Eufaula Division if the plaintiff or the defendant resided in the former, without the consent of the plaintiff or the defendant; the Court noted that whenever a civil cause was pending in either the Eufaula Division or the Clayton Division and the defendant resided in the other division, "`it shall be the duty of the judge of said court, on the application of such defendant or his attorney, in writing, or in open court, to transfer said cause to the court held in [that other division].'" 659 So.2d at 117 (quoting the Act). Thus, the legislation "designating the time and place of holding court in Barbour County differs substantially from the Act creating the Bessemer Division in Jefferson County and the Enterprise Division in Coffee County." 659 So.2d at 117. "Nothing indicates that this case [which was brought in the Clayton Division] should have been brought in the Eufaula Division of the Circuit Court of Barbour County, so as to require the circuit judge to transfer the case to that division under § 12-11-11 [Ala.Code 1975]." 659 So.2d at 117. Accordingly, in contrast to civil actions filed in either Jefferson County or Coffee County, "[i]nsofar as civil actions are concerned, Barbour County is a single entity, and a cause of action arising in any geographical part of Barbour County can be filed in either courthouse in Barbour County, without violating the general venue laws of the state." 659 So.2d at 117. Defendants residing in either of the two judicial divisions simply had "a waivable right" to have the action tried in the courthouse in the geographical division in which the defendant resided. 659 So.2d at 117. Thus, despite the fact that juries for civil cases tried in either the Clayton Division or the Eufaula Division were drawn exclusively from within that particular division, the legislation creating the two divisions did not accord them the status of the judicial divisions legislatively established for Jefferson County and Coffee County, i.e., the two divisions in Barbour County were deemed not to be separate judicial districts for purposes of venue. In making that distinction in Chrysler Corporation, this Court cited, and relied upon the reasoning of, Glenn v. Wilson, 455 So.2d 2 (Ala.1984), and Ex parte Humana, supra. The Court noted that those two cases recognized the fact that in the legislation creating the two divisions in Jefferson County and Coffee County, respectively, one of the divisions was given "exclusive jurisdiction" of all causes of actions arising therein (or, alternatively, as to Coffee County, causes of action arising in the division in which the defendants resided), with the result that (disregarding a defendant's residence) the particular division would have the "exclusive jurisdiction" for purposes of venue of a cause of action arising in the division. Therefore, under those respective statutes of creation, a defendant in an action arising in the division given exclusive jurisdiction for venue purposes would have the right, enforceable by the writ of mandamus, to have an action filed in the other division transferred to the division having exclusive jurisdiction. In Humana, the Court noted that Rule 82(b), Ala. R. Civ. P., providing for actions against individuals *698 to be brought in a certain county when the existing statutes established venue for individuals at law and in equity were inconsistent, did not "suffice to resolve the venue question" relating to the two judicial divisions, because Rule 82 refers only "to the proper county." 462 So.2d at 924.
Accordingly, and as the legislature would have understood in 1999 when it undertook to redraft § 6-3-7, "suits `arising in' the geographical boundaries of the Bessemer Cutoff but filed in Birmingham (or, vice versa, suits `arising in' the Birmingham Division but filed in Bessemer) are subject to transfer to the proper division pursuant to the provisions of § 12-11-11 Code 1975." Glenn v. Wilson, 455 So.2d at 4.
Considering this pre-1999 backdrop of court decisions, we conclude that Justice Houston accurately assessed the legislative intent with respect to § 6-3-7(d) in his special writing in Hanna Steel, 905 So.2d at 809:
"In my opinion, Act No. 99-249 [which enacted § 6-3-7(d)] did not revoke Act No. 213, as amended. It merely addressed the holding in Ex parte Chrysler Corp., 659 So.2d 113 (Ala.1995), where I, writing for a unanimous division of the Supreme Court, wrote:
"`Insofar as civil actions are concerned, Barbour County is a single entity, and a cause of action arising in any geographical part of Barbour County can be filed in either courthouse in Barbour County, without violating the general venue laws of the state.'
"659 So.2d at 117.
"Barbour County has had two courthouses  one in the county seat of Clayton and the other in Eufaula  since the enactment of Act No. 106, Acts of Alabama 1878-79....
"In Ex parte Chrysler Corp., the defendants in a wrongful-death action argued that the Eufaula and Clayton divisions of Barbour County should be treated as two separate judicial districts for venue purposes, citing Glenn v. Wilson, 455 So.2d 2, 4-5 (Ala.1984), which applied to Jefferson County, and Ex parte Humana, Inc., 462 So.2d 922, 925 (Ala.1985), which applied to Coffee County. The wording of the local act, as amended, pertaining to Barbour County did not permit the interpretation that the Clayton division and the Eufaula division were two separate judicial districts for purposes of venue. Jefferson, Coffee, and Barbour Counties drew jurors not from the county at large, but from the separate divisions of the counties. (St. Clair County also had two courthouses, but it drew jurors from the county at large to serve at both courthouses.) Because Barbour County had been held to be a single entity, there was nothing to justify drawing juries from geographical divisions less than the county as a whole, until Ala.Code 1975, § 6-3-7(d), was enacted in 1999, which provided that `the divisions shall be treated as two separate judicial districts for purposes of venue and for purposes of any change of venue, unless the jury venire is drawn from throughout the entire county.'
"In my opinion, § 6-3-7(d) has the limited effect of making the Clayton division and the Eufaula division of Barbour County separate judicial districts for purposes of venue to justify the selection of jurors from within those two divisions rather than from the entire county."
Accordingly, we conclude that § 6-3-7(d) was not intended by the legislature to change the "exclusive jurisdiction" status of the Bessemer Division, inasmuch as the pre-1999 decisions of this Court had *699 clearly established the principle that the Bessemer Division, to use the language of Glenn v. Wilson, quoting United Supply Co. v. Hinton Construction & Development, Inc., 396 So.2d 1047 (Ala.1981), "`could exercise [the same power exercised in the Jefferson County judicial circuit] only for actions arising in its territorial boundary.'" 455 So.2d at 3. Glenn v. Wilson stands for the proposition that despite the fact that the exercise of judicial power in the Bessemer Division should be deemed a matter of venue as opposed to subject-matter jurisdiction, the venue accorded the Bessemer Division is nonetheless exclusive by virtue of the substantive language of the Bessemer Act allowing that division to exercise its judicial power only for actions arising in its territorial boundary. This was the status established for the Bessemer Division as of the enactment of § 6-3-7(d) by six decades of interpreting caselaw, and the legislature's declaration that "in any county having two courthouses [such as Jefferson County], the divisions shall be treated as two separate judicial districts for purposes of venue" can only be understood to have accepted the judicially declared respective status of the Bessemer Division vis-à-vis the Birmingham Division.
"It is an ingrained principle of statutory construction that `[t]he Legislature is presumed to be aware of existing law and judicial interpretation when it adopts a statute. Ex parte Louisville & N.R.R., 398 So.2d 291, 296 (Ala.1981).' Carson v. City of Prichard, 709 So.2d 1199, 1206 (Ala.1998). `"It is a settled rule that in the adoption of the Code the Legislature is presumed to have known the fixed judicial construction pre-existing statutes had received, and the substantial re-enactment of such statutes is a legislative adoption of that construction."' Wood-Dickerson Supply Co. v. Cocciola, 153 Ala. 555, 557, 45 So. 192, 192 (1907) (quoting Morrison v. Stevenson, 69 Ala. 448, 450 (1881)). `It is a familiar principle of statutory interpretation that the Legislature, in enacting new legislation, is presumed to know the existing law.' Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen, 714 So.2d 293, 297 (Ala.1998)."
Ex parte Fontaine Trailer Co., 854 So.2d 71, 83 (Ala.2003). Thus, to honor the legislative directive and treat the Bessemer Division as a separate "judicial district" for purposes of venue does not require us to depart from the treatment accorded venue as it relates to the Bessemer Division by Glenn v. Wilson, Humana, Longmire, and Chrysler Corp., supra.
Haynes Downard also argues that to the extent § 6-3-7(d) might otherwise alter the venue status of the Bessemer Division, it would do so only in the case of corporate defendants. "Because § 6-3-7(d) is part of a provision applicable only to corporations, it would not apply to Haynes Downard, which consists of an Alabama Limited Liability Partnership and [to Jones,] a natural person." (Petition, pp. 14-15 n. 3.) RockSolid does denominate Haynes Downard in the complaint as an "LLP" and characterizes it in the body of the complaint as "a limited liability partnership organized and existing pursuant to the laws of the State of Alabama." A registered limited liability partnership must include as the last letters of its name the abbreviation "LLP," or otherwise include a reference to its status in its name. Ala.Code 1975, § 10-8A-1002. Such a partnership "is for all purposes, except as provided in Section 10-8A-306 [not relevant to our inquiry], the same entity that existed before the registration and continues to be a partnership under the laws of this state...." § 10-8A-1001(i). "The method for determining the correct venue in actions against [a corporation] *700 is not applicable to the question of venue in an action against a partnership." Ex parte Wilson, 706 So.2d 1151, 1155 (Ala.1997).
Does § 6-3-7(d) apply only to corporations? RockSolid appeared to entertain that view in the response it filed in the trial court to Haynes Downard's motion to sever and transfer, stating:
"Section 6-3-7(d), at least as to suits against corporations, changed the law regarding the issue of venue in the Bessemer Division.... When read in para materia with the rest of Ala.Code (1975) § 6-3-7, the text of Section 6-3-7(d) clearly demonstrates that the Legislature directed our courts to apply the substantive venue law for corporations, Section 6-3-7(a)-(c) to the Bessemer Division as though it were a separate county."
In its brief to this Court, RockSolid again acknowledges the possibility of this limited effect of § 6-3-7(d), stating: "With the enactment of Section 6-3-7(d), the Legislature recognized the confusion created by the separate local acts and rectified the problems in Barbour and Jefferson counties at least as to suits against corporations."
As noted, subdivision (d) is part of the legislature's complete rewrite of § 6-3-7, which before the rewrite had only prescribed venue as to corporations; it said nothing about the counties having two courthouses. The amendatory legislative act, Act No. 99-249, Ala. Acts 1999, stated in its title two purposes, separated by a semicolon: "To amend Section 6-3-7, Code of Alabama 1975, relating to venue of civil actions against corporations and transfer of venue, to provide further for venue and transfer of venue; to repeal Section 6-3-5, Code of Alabama 1975." Section 1 of Act No. 99-249 states that "Section 6-3-7, Code of Alabama 1975, is amended to read as follows." The text now codified as 6-3-7(a)-(d) follows. Section 2 of the act repeals Section 6-3-5 and contains a qualified repealer clause.
"Of course, the rule is well recognized that in the construction of a statute, the legislative intent is to be determined from a consideration of the whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found. The intent so deduced from the whole will prevail over that of a particular part considered separately."
Blair v. Greene, 246 Ala. 28, 30, 18 So.2d 688, 689 (1944).
Given these principles, the original subject matter of § 6-3-7, and the subject of the amendatory act as described in its title, we can conclude only that the legislature intended the whole of § 6-3-7, as amended, to relate to venue for only corporate defendants and not to venue for natural persons or partnerships. Accordingly, regardless of what effect § 6-3-7(d) might have on the issue of venue for a corporate defendant sued on a cause of action arising in the Bessemer Division, it has no application to the issue of venue for the claims against Haynes Downard Andra & Jones, a limited liability partnership, and Jones, a natural person.
For all of these reasons, Haynes Downard has a clear right to have the claims asserted against it severed and transferred to the Birmingham Division of the Jefferson Circuit court, pursuant to § 12-11-11, Ala.Code 1975. We grant its petition and issue the writ of mandamus.
PETITION GRANTED; WRIT ISSUED.
NABERS, C.J., and SEE, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
LYONS and WOODALL, JJ., concur in part and concur in the result.
*701 LYONS, Justice (concurring in part and concurring in the result).
I concur fully in the main opinion except that portion addressing the interpretation of § 6-3-7(d). Because the main opinion correctly holds that § 6-3-7(d) applies only to corporations and not to partnerships or natural persons, I consider any discussion of the proper interpretation of that section to be unnecessary and therefore dicta.
WOODALL, J., concurs.
NOTES
[1] Ala.Code 1975, § 12-11-11, provides, in pertinent part, that "[w]henever it shall appear to the court that any case filed therein should have been brought in another court in the same county, the court shall make an order transferring the case to the proper court...."
[2] The reference to the Bessemer Act is a reference to Act No. 213, Ala. Local Acts 1919, which divided Jefferson County into two divisions  the Birmingham Division and the Bessemer Division.