NABERS, Chief Justice.
For the second time, this Court is asked to consider whether Daniel R. Boyd, Debra C. Butler, and Bryan M. Kelley, coal miners who claim they were injured by exposure to a certain chemical while employed as coal miners and whose claims arose in Tuscaloosa County (“the Tuscaloosa plaintiffs”), may pursue their claims against 11 defendants, including Flexible Products Company and Micon Products International, Inc., involved in the manufacture, use, and distribution of the chemical in the Bessemer Division of the Jeffer *113 son Circuit Court. The defendants have petitioned for the writ of mandamus directing the trial court to sever the claims of the Tuscaloosa plaintiffs and transfer those cases from the Bessemer Division of the Jefferson Circuit Court to another venue. We grant the petition.

Procedural History

This petition concerns three consolidated actions that were filed in the Bessemer Division of the Jefferson Circuit Court in 2001 and 2002. In Ex parte Flexible Products Co., 915 So.2d 34 (Ala.2005)(“Flexible Products I”), we described the procedural history in these actions as follows:
“This petition for a writ of mandamus arises from a number of actions in which 1,675 plaintiffs, all individuals who claim that they were injured by exposure to isocyanate while employed as coal miners, have sued 11 defendants, including Flexible Products Company and Micon Products International, Inc., all of which are involved in the manufacture, use, and distribution of isocyanate.
[[Image here]]
“The underlying cases began with three actions brought by the plaintiffs: Bice v. Micon, Inc. (CV-01-1194), filed in September 2001; Abernathy v. Micon, Inc. (CV-01-1341), filed in October 2001; and Acklin v. Micon, Inc. (CV-02-1518), filed in October 2002. In all three cases, the plaintiffs asserted claims of negligence, wantonness, outrage, failure to warn, violation of the Alabama Extended Manufacturer’s Liability Doctrine (‘the AEMLD’), misrepresentation, concealment, breach of warranties, and conspiracy. On August 24, 2004, the plaintiffs moved to consolidate the three cases pursuant to Rule 42, Ala. R. Civ. P., and on November 17, 2004, the trial court issued the CMO [case-management order] addressing the motion to consolidate. In pertinent part, the CMO states:
“ ‘2. Motion To Transfer
“ ‘The [trial court] finds under the Alabama Code of 1975, § 6 — 3—7(c), that venue is proper where the cases sought to be venued together involve common issues of law or material fact and the action can be maintained more efficiently and economically for all parties if consolidated and tried here in the Bessemer Division of Jefferson County and the interest of Justice supports the joinder of the parties as Plaintiffs in one action as provided by [Ala. R. Civ. PJ Rule 42.
“ ‘3. Consolidation.
“ ‘The above styled cases are consolidated for pretrial purposes, discovery, motions, and trial under [Ala. R. Civ. P.] Rule 42(a). This order constitutes a determination that these actions are consolidated for trial. They are consolidated because they contain common questions of fact and are sufficiently complex. The claims by the Plaintiffs in those cases are significantly the same and raise the common questions of fact.’ ”
915 So.2d at 37 (footnote omitted).
Many of the claims of the 1,675 plaintiffs arose in the Bessemer Division; it is undisputed that those claims could be filed in the Bessemer Division. Moreover, no party disputes that the claims of the Tuscaloosa plaintiffs arose in Tuscaloosa County.[2] In Flexible Products I, the Court stated *114 that a determination as to the propriety of venue for the Tuscaloosa plaintiffs was “premature” because the trial court had yet to determine whether “questions of law or material fact common to all those persons ... predominate over individualized questions pertaining to each plaintiff,” a necessary condition to pendent venue (the rule that venue being good for one, it is good for all) under § 6-3-7(c), Ala.Code 1975. 915 So.2d at 51. We instructed the trial court to vacate that part of the case-management order that held that venue in the Bessemer Division was proper as to the Tuscaloosa plaintiffs. The trial court has since determined that common questions do predominate and that the claims of the Tuscaloosa plaintiffs fall within the scope of § 6 — 3—7(c). This petition does not challenge those findings.
Instead, the question now presented is whether, in view of the legislation creating the Bessemer Division — Act No. 213, Ala. Local Acts 1919 (“the Bessemer Act”)— § 6-3-7, Ala.Code 1975, applies to actions brought in the Bessemer Division that arise outside of Jefferson County.

Standard of Review

“ ‘A writ of mandamus is an extraordinary remedy, and it will be “issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.” ’ ”
915 So.2d at 39 (quoting Ex parte Empire Fire & Marine Ins. Co., 720 So.2d 893, 894 (Ala.1998)).
Flexible Products I also concerned a petition for the writ of mandamus. Thus, the same standard of review applies in this proceeding.

Analysis

The Bessemer Act divided Jefferson County into two divisions — the Birmingham Division and Bessemer Division.[3] Section 2 of the Bessemer Act states:
“The said Circuit Court [for the Bessemer Division], holding at Bessemer, as in this Act provided, shall have, exercise and possess all of the jurisdiction and powers which are now or which may hereafter be conferred by law on the several Circuit Courts of this State, which said jurisdiction and powers shall be exclusive in, limited to, and extend over that portion of the territory of the County of Jefferson, which is included in the following precincts, to-wit: [physical description of the Bessemer Division] and from and over the above mentioned and described territory all jurisdiction and powers heretofore or now exercised or existing therein by the Circuit Court of [Jefferson County,] as now held at Birmingham, is hereby expressly excluded.”
Despite use of the word “jurisdiction” in section 2, we have interpreted the Bessemer Act as addressing venue. Ex parte Jackson, 516 So.2d 768, 769 (Ala.1986) (“[T]he Bessemer Court Act ... should be read as venue legislation rather than jurisdiction legislation.... ”). This Court has consistently discussed the application of the Bessemer Act in terms of whether “venue is proper” in the Bessemer Division with respect to a particular action, claim, or plaintiff. See Ex parte Children’s Hosp. of Alabama, 931 So.2d 1, 8 (Ala.2005)(venue is proper in the Bessemer Division only as to those claims that arise within its territorial boundaries); Ex parte *115 Hanna Steel Corp., 905 So.2d 805, 807 (Ala.2004)(issuing the writ of mandamus because “venue in the Bessemer Division of the Jefferson Circuit is improper”). We recently stated in Ex parte Haynes Downard Andra & Jones, LLP, 924 So.2d 687, 699 (Ala.2005), that “the venue accorded the Bessemer Division is ... exclusive by virtue of the substantive language of the Bessemer Act allowing that division to exercise its judicial power only for actions arising in its territorial boundary.” Because the Bessemer Act is a venue statute, a defendant can waive his or her right to transfer an action that was improperly filed in the Bessemer Division. See Rule 12(h)(1), Ala. R. Civ. P.
Viewing the actions of the Tuscaloosa plaintiffs independent of the other consolidated claims, venue in the Bessemer Division is improper as to those actions because it is undisputed that the claims of the Tuscaloosa plaintiffs did not arise within the Bessemer Division. See Ex parte Walter Indus., Inc., 879 So.2d 547, 553 (Ala.2003)(holding that claims that arose in Tuscaloosa County and that were filed in the Bessemer Division were subject to transfer). The trial court found, however, that, under the pendent venue feature of § 6-3-7(c), Ala.Code 1975, the Tuscaloosa plaintiffs could join an action in which venue as to the claims of the other plaintiffs was proper in the Bessemer Division. See Unum Life Ins. Co. of America v. Wright, 897 So.2d 1059, 1079 (Ala.2004)(stating that joinder of plaintiffs as to whom venue was improper may be permitted under § 6-3-7(c)).
The legislature rewrote § 6-3-7 in 1999 to address venue for civil actions against corporations. Act No. 99-249, Ala. Acts 1999. Section 6-3-7(c) states that, notwithstanding the pendent venue concept in Rule 82(c), Ala. R. Civ. P.,
“[vjenue [in an action against a corporation] must be proper as to each and every named plaintiff joined in the action unless the plaintiffs shall establish that they assert any right to relief jointly, severally, or arising out of the same transaction or occurrence and that the existence of a substantial number of questions of law or material fact common to all those persons not only will arise in the action, but also: (1) that such questions will predominate over individualized questions pertaining to each plaintiff; (2) the action can be maintained more efficiently and economically for all parties than if prosecuted separately; and (3) that the interest of justice supports the joinder of the parties as plaintiffs in one action.”
§ 6-3-7(c), Ala.Code 1975 (emphasis supplied). The trial court here found that the actions filed by the Tuscaloosa plaintiffs satisfied all of the criteria in § 6-3-7(c) for pendent venue, a finding not challenged in the petition before us.[4]
Accordingly, the issue here is whether the legislature intended § 6-3-7 to override the Bessemer Act and its limitations on the judicial power of the Bessemer Division as to claims arising in that Division. The relationship of these two statutes was thoroughly analyzed in Ex parte Haynes Downard, supra. In Haynes Downard, the plaintiffs joined claims against multiple defendants in an action *116 filed in the Bessemer Division. The claims against one defendant arose in the Birmingham Division of Jefferson County, but those against the other defendants allegedly arose in the Bessemer Division. 924 So.2d at 691. Relying on the pendent-venue concept in Rule 82(c), Ala. R. Civ. P., the plaintiffs in Haynes Downard argued that, because venue for the claims arising in Bessemer was proper in the Bessemer Division, the circuit court in the Bessemer Division could consider all of the plaintiffs’ claims.[5] This Court held, however, that Rule 82(c) applies only to venue issues as between different counties, not venue issues as between judicial divisions in the same county. 924 So.2d at 692.
The plaintiffs in Haynes Downard further asserted that § 6-8-7 — revised in 1999 — required treating the Bessemer Division as a separate county for purposes of the general venue laws. According to that argument, if the Bessemer Division was so treated, the circuit court in the Bessemer Division could consider claims arising outside Bessemer if those claims were joined with claims as to which venue in the Bessemer Division was proper. The plaintiffs in Haynes Downard relied on subsection (d) in § 6-3-7 in support of this argument:
“(d) Notwithstanding Section 6-3-10, or any local laws relating to venue, in any county having two courthouses, the divisions shall be treated as two separate judicial districts for purposes of venue and for purposes of any change or transfer of venue, unless the jury venire is drawn from throughout the entire county.”
The Haynes Downard Court, however, rejected that argument, held that venue as to the claims arising in the Birmingham Division was not proper in the Bessemer Division, and ordered that those claims be transferred from the Bessemer Division. 924 So.2d at 700. The Court found that, when § 6-3-7 was revised in 1999, the legislature did not intend to change the limitations of judicial power vested in the Bessemer Division by the Bessemer Act. 924 So.2d at 699. Specifically, interpreting § 6-3-7(d), the Court stated:
“[W]e conclude that § 6-3-7(d) was not intended by the legislature to change the ‘exclusive jurisdiction’ status of the Bessemer Division, inasmuch as the pre-1999 decisions of this Court had clearly established the principle that the Bessemer Division ... ‘could exercise [the same power exercised in the Jefferson County judicial circuit] only for actions arising in its territorial boundary. ’ ... Glenn v. Wilson, [455 So.2d 2 (Ala. 1984) ] stands for the proposition that despite the fact that the exercise of judicial power in the Bessemer Division should be deemed a matter of venue as opposed to subject-matter jurisdiction, the venue accorded the Bessemer Division is nonetheless exclusive by virtue of the substantive language of the Bessemer Act allowing that division to exercise its judicial power only for actions arising in its territorial boundary. This was the status established for the Bessemer Division as of the enactment of § 6-3-7(d) by six decades of interpreting caselaw, and the legislature’s declaration that ‘in any county having two courthouses [such as Jefferson County], the divisions shall be treated as two separate judicial districts for purposes of venue’ can only be understood to have accepted the judicially declared respective status of the Bessemer Division visa-vis the Birmingham Division.
“ ‘It is an ingrained principle of statutory construction that “[t]he Legisla *117 ture is presumed to be aware of existing law and judicial interpretation when it adopts a statute-” ... ‘“It is a settled rule that in the adoption of the Code the Legislature is presumed to have known the fixed judicial construction pre-existing statutes had received, and the substantial re-enactment of such statutes is a legislative adoption of that construction.’ ” ... “It is a familiar principle of statutory interpretation that the Legislature, in enacting new legislation, is presumed to know the existing law.” ... ’
“... Thus, to honor the legislative directive and treat the Bessemer Division as a separate ‘judicial district’ for purposes of venue does not require us to depart from the treatment accorded venue as it relates to the Bessemer Division [in our prior decisions].”
924 So.2d at 698-99 (emphasis supplied).
In Haynes Doumard this Court soundly reasoned that the legislature did not intend to amend, alter, or modify the Bessemer Act when it enacted § 6 — 3—7(d) in 1999. Nothing in the language of § 6-3-7(c) indicates any intent by the legislature to modify the Bessemer Act as it had been interpreted by this Court. Accordingly, the rationale in Haynes Downard that § 6 — 3—7(d) did not expand the judicial power accorded the Bessemer Division by the Bessemer Act is equally applicable to § 6-3-7(e). In light of this Court’s longstanding interpretation of the Bessemer Act — i.e., that the Bessemer Division may “exercise its judicial power only for actions arising in its territorial boundary” — we conclude that § 6-3-7(c) does not confer authority to the trial court to adjudicate the claims of the Tuscaloosa plaintiffs.[6]
As a result, the defendants have a clear legal right to an order severing the claims of the Tuscaloosa plaintiffs and transferring those claims from the Bessemer Division. The petition for the writ of mandamus is therefore granted.[7]
*118 PETITION GRANTED; WRIT ISSUED.
SEE, HARWOOD, WOODALL, STUART, SMITH, and BOLIN, JJ„ concur.
LYONS and PARKER, JJ., dissent.

. The case-management order divides the actions into separate trial groups and staggers discovery by group. The Tuscaloosa plaintiffs are in a group as to which discovery has been substantially undertaken. Although discovery has not been completed as to most plaintiffs, the defendants suggest that half of the 1,675 actions arose outside the Bessemer Division.

. The history of the Bessemer Act and a discussion of many of the cases interpreting it can be found in Ex parte Walter Industries, Inc., 879 So.2d 547, 549-52 (Ala.2003).

. The defendants state that they have "repeatedly argued that should pendent venue apply, the requirements [in § 6-3-7(c) ] are not satisfied.” (Reply brief at 4.) However, in their petition for the writ of mandamus, the defendants state only that they argued the issue to the trial court. (Petition at 6.) The petition does not present this issue to this Court, nor does it cite any authority or discuss any facts that would support the argument that the requirements of § 6-3-7(c) have not been satisfied.

. Rule 82(c) states: “Where several claims ... have been joined, the suit can be brought te any county in which any one of the claims could have properly been brought.”

. Section 2 of Act No. 99-249 states that "nothing [in Act No. 99-249] shall change, amend or otherwise affect more specific provisions in other chapters which provide for where actions may be filed....” Even though the Bessemer Act is not codified in a chapter of the Alabama Code, this language indicates a clear legislative intent that specific venue provisions, such as the Bessemer Act, were not affected by the revision of § 6-3-7.

. The dissenting opinion states that the construction of the Bessemer Act in this opinion creates a violation of the Equal Protection Clause of the United States Constitution in that it treats the Bessemer Division as “an illegitimate stepchild of a court,” makes residents of that Division "victims of discriminatory treatment,” "blatantly favors Birmingham Division residents,” and treats citizens who happen to reside in Bessemer as “second class.” No such arguments were made to this Court by any party.
The dissent fails to give due weight to the fact that, in enacting the Bessemer Act, the legislature afforded residents of the Bessemer Division significant advantages over others in Jefferson County. If a claim arises in the Bessemer Division, its residents may litigate that case in the Bessemer Division before a jury selected exclusively from that Division. Bessemer Division residents also have the benefit of judges dedicated to cases arising in that Division and the convenience of a special local courthouse. In this case, the plaintiffs whose claims arose in Bessemer enjoy those very privileges. Far from victimizing residents of the Bessemer Division or treating them as "second class,” the Bessemer Act accords them a package of special privileges not given others in Jefferson County.
Equal-protection concerns arise in the absence of “a plausible policy reason for a classification.” Fitzgerald v. Racing Ass’n of Central Iowa, 539 U.S. 103, 107, 123 S.Ct. 2156, 156 L.Ed.2d 97 (2003). There certainly is a plausible policy reason for the legislature’s creation of the Bessemer Division and its grant to residents of the western section' of Jefferson County — a geographically large county — of the convenience of a local court *118 house, judges devoted to cases arising in that Division, and locally situated juries. In granting these privileges, which also entail inconveniences to non-Bessemer Division litigants made parties in that Division, the legislature clearly had the authority to limit the reach of the court in that Division. Even though certain limitations may accompany the palpable benefits accorded residents of the Bessemer Division under the Act, certainly the Bessemer Act, as we interpret it, contains no arbitrary classification that violates equal-protection rights under the United States Constitution.